CAMPO MACHINING CO., INC., Plaintiff-Appellee,

v.

LOCAL LODGE NO. 1926 OF the INTERNATIONAL ASSOCIATION OF the MACHINISTS AND AEROSPACE WORKERS, and Clyde T. Ozbun, Defendants-Appellants.

No. 75–1284.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 24, 1976.

Decided May 18, 1976.

Richard L. Barnes of Kothe, Nichols & Wolfe, Inc., Tulsa, Okl., for plaintiff-appellee.

Catherine C. Harris of Youngdahl & Larrison, Little Rock, Ark., for defendants-appellants.

Before BREITENSTEIN, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Appellant seeks reversal of a judgment which set aside and refused to enforce the award of an arbitrator in a labor dispute.

On March 14, 1973, the plaintiff-appellee employer, Campo Machining Company, Inc., and the defendant-appellant union, Local 1926 of the Int'l Ass'n of Machinists and Aerospace Workers, entered into a collective bargaining agreement which in part provided that an employee could be discharged, demoted, or otherwise disciplined only with "good and sufficient cause"; disputes between the union and the company over the existence of "good and sufficient cause" were to be handled through a grievance procedure, the final step of which was submission to "final and binding" arbitration.

The agreement also contained authorization for the company to promulgate "reasonable" shop rules not in conflict with other contract provisions. Pursuant thereto, the company did issue a set of rules prescribing specific "penalty points" for various shop offenses and set forth consequences of accumulating a specific number of points. One of these rules, Rule 26, stated, in effect, that a single incident of leaving the plant during the workshift without permission would be punished by discharge.

The arbitrator's undisputed findings are as follows: The employee, defendant-appellant Clyde Ozbun, who is the central figure in this controversy, had been a machinist for 30 years and an employee of Campo Machining since 1971. Around the time of the incident, Ozbun, rated a "Machinist A" at Campo, had been worried about his superiors' view of his job competency and efficiency. On the morning of Friday, November 9, 1973, Ozbun was working on what he understood to be a "hot" order. Realizing that he needed certain cutters, he ap-

proached the plant manager to ask about them. (He had asked to have these sharpened several weeks before.) The plant manager said the cutters had not been sharpened and told Ozbun to look around the plant and find some others to do the job. Ozbun exchanged some words with the plant manager and departed the plant, not to return until the following Monday to find that he had been fired.

The arbitrator found that Ozbun did breach Rule 26 and that the rule was "reasonable." He continued that although "there would be justification for discipline," there was not "good and sufficient cause" for a discharge. He ordered Ozbun reinstated with back pay, subject to the company's right to suspend him for no more than one month from the date of the offense.[1]

The company filed a declaratory judgment action in U.S. District Court pursuant to Section 301 of the National Labor Relations Act, 29 U.S.C. Section 185, seeking to have the arbitrator's award set aside. The union sought in its answer enforcement of the award. The trial court granted summary judgment for the company, stating that the arbitrator had exceeded his authority under the collective bargaining agreement. Having found Rule 26 reasonable on its face, the court added that the arbitrator had no authority to find that a specific application of the rule would be unreasonable. We disagree with this conclusion.

Our first inquiry is the scope of judicial review of arbitration awards. The Supreme Court, in *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), has set out guidelines for review. The Court held that so long as the arbitrator interprets and applies the collective bargaining agreement and his award is rooted in the agreement, the arbitrator's decision on the merits is final[2] and not reviewable.

> It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns the construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his. *Id.* at 599, 80 S.Ct. at 1362, 4 L.Ed.2d at 1429.

Thus, the scope of review is very narrow. The court is not entitled to judge the award independently. So long as the arbitrator reasons from his factual findings to his conclusion, and limits himself to interpreting and applying the agreement, a court must give great deference to the arbitrator's decision.[3] *E. g., Amalgamated Meat Cutters & Butcher Workmen of North America, Local 195 v. Cross Brothers Meat Packers, Inc.*, 518 F.2d 1113 (3d Cir. 1975); *Cannon v. Consolidated Freightways Corp.*, 524 F.2d 290, 294–296 (7th Cir. 1975); *Local 103 of the International Union of Electrical, Radio and Machine Workers v. RCA Corporation*, 516 F.2d 1336 (3d Cir. 1975).

A review of the arbitrator's decision reveals that he did confine himself to interpreting and applying the collective bargain-

---

1. From the back pay award were to be deducted any regular earnings or unemployment compensation received by Ozbun during the period of unjust discharge.

2. The collective bargaining agreement involved in *Enterprise Wheel* provided that any differences regarding "the meaning and application" of the agreement should go to arbitration and that the arbitrator's decision "shall be final and binding on the parties." Similarly, the Campo/Local Lodge agreement provided that disputes involving *inter alia* "the effect, interpretation [or] application" of the agreement should be subject to the grievance procedure and ultimately to arbitration and that the arbitrator's decision "shall be final and binding on the parties."

3. *Cf. Banyard v. N.L.R.B.*, 164 U.S.App.D.C. 235, 505 F.2d 342 (1974), where the District of Columbia Circuit approved the NLRB's policies as expressed in *Spielberg Manufacturing Company*, 112 NLRB 1080 (1955), and *Collyer Insulated Wire*, 192 NLRB 837 (1971). In *Spielberg*, the Board established its policy of dismissing unfair labor practice cases where the issues have been previously determined in arbitration. In *Collyer*, the Board established a policy of withholding action in unfair labor practice cases until arbitration has been concluded, and if the issues have been determined, the Board will defer, under *Spielberg*. Thus, the NLRB has a very strong policy of deferring to arbitration.

ing agreement. Before reaching the merits, the arbitrator considered the status and applicability of the Shop Rules. He found that although they were adopted in conformity with the procedures set out in the agreement and were generally reasonable, he concluded that they were not incorporated into the agreement. He noted further that both the union and employees were aware of the rules and had had an opportunity to contest their reasonableness.

Upon reaching the merits, the arbitrator recognized that Ozbun's leaving was an offense requiring disciplinary action. However, he held that discharge was not warranted under the particular circumstances. He took into account the "tension" between a literal application of Rule 26 and the provision of the agreement that employees be discharged only for "good and sufficient cause" and said:

> Even in the face of literal mandates management expects to exercise judgment in given cases *after* all of the relevant facts are known. This exercise of judgment is subject to the limitations of the Agreement requiring disciplinary and discharge decisions to be for good and sufficient cause. The grievance and arbitration provisions specifically provide that these decisions are subject to review procedures of grievance processing and arbitration. I find nothing in the arbitration provisions that limits the arbitrator's review in this kind of case to the facts only. It seems then it is proper for an arbitrator under this Collective Bargaining Agreement to consider whether the facts as made in a given disciplinary case constitute a sufficient basis under the Agreement for the discipline assessed.

He concluded that mere breach of Rule 26 did not warrant discharge in every case, and that after considering all of the circumstances here, including Ozbun's work record, "good and sufficient cause" was lacking.

The arbitrator's reasoning demonstrates that he considered all of the facts in his

effort to determine whether the dismissal met the "good and sufficient cause" standard set forth in the collective bargaining agreement. In doing so, he was engaged in the construction of the agreement. Moreover, his concern with resolving the "tension" between Rule 26 and "good and sufficient cause" standard further evidences that he limited his efforts to interpretation.

■ The management rights clause of the agreement gives to management the right to promulgate rules and regulations so long as they are not "inconsistent or in conflict with the provisions of this agreement." In the light of this language, it becomes clear that when the arbitrator was determining whether mere violation of Rule 26 was always cause for dismissal, he was engaged in interpretation of the agreement. *E. g., Timken Company v. United Steelworkers of America*, 492 F.2d 1178 (6th Cir. 1974); *Lynchburg Foundry Company v. United Steelworkers of America*, 404 F.2d 259 (4th Cir. 1968).

■ In the award, the arbitrator directed Campo to reinstate Ozbun without any loss of seniority and to award back pay "between the end of any suspension period the Company may assess and the date of his reinstatement." [4] An arbitrator's award will be enforced if "it draws its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Wheel & Car Corp., supra*, 363 U.S. at 597, 80 S.Ct. at 1361, 4 L.Ed.2d at 1428; *Amalgamated Meat Cutters & Butcher Workmen of North America, Local 195 v. Cross Brothers Meat Packers, Inc.*, 518 F.2d 1113 (3d Cir. 1975). The collective bargaining agreement between Campo and the Local Lodge provides that if a dismissal is found to be without cause the employee "shall be reinstated to his former position and compensated for all time lost at his average hourly earnings, if so found by the selected arbitrator." It also provides that no seniority or other rights to benefits shall be affected. The award, then, is drawn directly from the

---

4. The arbitrator pointed out that since the offense was serious, "a suspension without pay for up to one calendar month from the date of the offense would be justified."

agreement; we cannot say that the arbitrator exceeded his authority. Moreover, since courts favor the arbitrator's exercise of a broad discretion in fashioning remedies, *Enterprise Wheel, supra; Lynchburg Foundry Company v. United Steelworkers of America, supra,* the portion of the award which allows Campo to decide whether the employee should have been suspended is also within the arbitrator's authority. Also a question of interpretation (the province of the arbitrator) is whether compensation "for all time lost" means that the employee should receive back pay from the date of the erroneous dismissal to reinstatement or nothing at all or whether a deduction can be made for a suspension period.

We hold, then, that the arbitrator did not exceed his authority in finding that Ozbun's discharge was not for "good and sufficient cause" or in fashioning the remedy. Accordingly, we reverse and remand with directions that the District Court enter an order enforcing the arbitrator's award.