Ronald N. GARNER and Thomas L. Baker, Petitioners,

v.

The CITY OF TULSA, Oklahoma, a municipal corporation, Respondent.

No. 58072.

Supreme Court of Oklahoma.

Sept. 28, 1982.

Donald M. Bingham, Chapel, Wilkinson, Riggs, Abney & Henson, Tulsa, for petitioners.

Neal E. McNeill, City Atty. by Gerald W. Wright, Asst. City Atty., Tulsa, for respondent.

LAVENDER, Justice:

This is an application to assume original jurisdiction and for a writ of mandamus. The essential and undisputed facts on the

basis of which jurisdiction and relief are sought are as follows:

Respondent, City of Tulsa, is a municipal corporation and a city of the first class under the laws of the State of Oklahoma. Respondent operates under a home-rule charter approved by the Governor on January 5, 1909.

Petitioner Thomas L. Baker is president of Local No. 176, International Association of Fire Fighters, an unincorporated association, which is the exclusive bargaining agent for the Tulsa Fire Department in matters pertaining to collective bargaining and labor disputes between said fire fighters and Respondent.

Petitioner Ronald N. Garner is a member of the union who filed the grievance which is the subject of this action.

On August 26, 1980, the Union and the City entered into a written Collective Bargaining Agreement pursuant to statutes now codified as 11 O.S.1981, § 51–101, et seq.

On October 27, 1980, the Union filed a grievance on behalf of Garner alleging that the City had violated Art. 11, § 5[1] of the agreement in that Garner had been on a disability retirement and was reinstated to the position of Firefighter after his medical situation had improved. Union contended Garner should be reinstated as a Relief Fire Equipment Operator and receive Relief Fire

Equipment Operator pay. City contended Garner did not then meet the training requirements of the agreement to entitle him to that education pay.

On April 16, 1981, the controversy was submitted to arbitration pursuant to 11 O.S. Supp.1977, § 51–106, et seq., and the arbitrator considered the following issues:

1. Whether the grievant, who was an acting and qualified Relief Driver of the Tulsa Fire Department at the time of his service-connected disability retirement in 1977, is entitled to the additional $35 per month pay which Relief Drivers are entitled under Art. 11, § 5 of the Collective Bargaining Agreement if his health is restored and he returns to work in 1980 under the provisions of 11 O.S.Supp.1977, § 49–109[2] which provides that he shall "be restored to active service at the salary attached to the rank held at the time of his disability retirement";

2. Whether a Relief Driver is a "rank" within the meaning of the Collective Bargaining Agreement and 11 O.S.Supp.1977, § 49–109;

3. If the position of Relief Driver is a rank, whether grievant is entitled to the $35 per month provided for in Art. 11, § 5 of the Agreement;

4. If the position of Relief Driver is not a rank, whether the management of the Tulsa Fire Department can deny grievant

1. Art. 11, § 5 provides: "Employees in the classification of Firefighter, Pay Grade FD–01, shall be eligible to receive Twenty-five Dollars ($25) per month in addition to their base pay if such Employees are approved as a Relief Driver or Tillerman on their assigned apparatus. Such Employees shall be required to successfully complete the required training courses as prescribed by the Tulsa Fire Department and possess a current three (3) year Fire Equipment Operator Training Course Certificate when such course becomes available. Effective January 1, 1981, the above allowance shall become Thirty-five Dollars ($35) per month."

2. 11 O.S.Supp.1977, § 49–109 in pertinent part provides: "Whenever any person serving in any capacity in a regularly constituted fire department of a municipality of the state shall

become so physically or mentally disabled as to prevent the effective performance of his duties while in, and in consequence of, the performance of his duty as such employee, the board of trustees of the Firemen's Relief and Pension Fund may, upon his written request, or without such request if it deem it for the good of said department, retire such person from active service, and if so retired, shall order and direct that he be paid from said Fund a monthly pension ...; provided that whenever such disability shall cease, such disability pension shall cease; ... *said formerly disabled person shall be restored to active service at the salary attached to the rank he held at the time of his disability retirement.* ...." (Emphasis added.)

the right to exchange duty under Art. 22 with any FD–01 whether or not such FD–01 may or may not be a Relief Driver.

The arbitrator made the following award on July 13, 1981:

"The grievance of the Union is arbitrable. The arbitrator has the authority to interpret 11 O.S.Supp.1977, § 49–109. He finds that that section was intended by the parties to be deemed a part of their collective bargaining agreement. A firefighter in the Tulsa Fire Department who has qualified as an R.F.E.O. is deemed to hold the rank of R.F.E.O. for the purpose of receiving the benefits contemplated by § 49–109 of Title 11, Oklahoma Statutes (1971). The grievance of the Union is sustained in accordance with the Opinion expressed above.

"The monetary portion of this Award shall be paid to the grievant not later than the end of the second pay period following the date of this Award."

The City of Tulsa failed and refused to honor the award and to implement the same, contending:

The Arbitrator exceeded his authority in that he determined that the provisions of 11 O.S.Supp.1977, § 49–109 were within the contemplation of the parties to the arbitration agreement and in that he applied the same in determining the issues before him in the arbitration hearing, thereby making the Fireman's Pension Fund law a part of the collective bargaining agreement between the City and the Union.

The City raised other objections to the award which, by reason of our holding in this cause, are unnecessary for us to consider.

Petitioners thereupon filed a petition in this Court seeking our assumption of original jurisdiction and a writ of mandamus.

The collective bargaining agreement provides (Art. 7—Grievance Procedure):

"Sec. 10. The arbitrator's authority *is strictly limited to the interpretation and application of the terms of this Agree-*

*ment.* The arbitrator shall have no jurisdiction to establish a new agreement or any variation or modification of the present Agreement, nor to arbitrate away, in whole or in part, any provision of this Agreement or any supplements thereto or amendments thereof; nor shall any wage structures or structure of job classifications covered by this Agreement be subject to arbitration. This shall not preclude individual wage grievances." (Emphasis added.)

"Sec. 9. With respect to the interpretation, enforcement, or application of the provisions of the AGreement, the decisions, findings, and recommendations of the arbitrator shall be final and binding on the parties to this Agreement; however, the authority and responsibility of Employer as provided by the Charter of the City of Tulsa shall not be usurped in any manner unless specifically amended or modified by this Agreement."

"Sec. 11. It is specifically and expressly understood that taking an appeal to arbitration constitutes an election of remedies and a waiver of any and all rights by the appealing party and all persons it represents to litigate or otherwise contest the appealed subject matter in any court or other forum. This Section shall not apply to the judicial enforcement of an arbitration award."

As a part of the Arbitrator's findings and award, it is stated:

"If one assumes ... that the agreement is silent on the subject of when, if and under what circumstances a firefighter is to receive benefits for an on-the-job injury and what are the conditions of his returning to work if his disability subsides, is it not to be said that a state statute on that subject would impact on the 'manner of conducting the operation and administration of the Tulsa Fire Department ...? The answer is patently obvious that it would. In which case it necessarily follows that the extent of the impact and/or the nature of the

relief to be afforded a firefighter can properly be the subject of a grievance whenever there is a difference of opinion over whether or not the Employer is properly exercising its right to conduct the operation and administration of the Department. [S]uch a matter can be the subject of a grievance. It is equally clear that the dispute before him is a proper grievance. .... The question is, being a grievance how is it to be resolved. That is to say, must it be resolved on the basis of the limited language within the 'four corners of the collective bargaining agreement' or may it be decided by applying both the agreement and the applicable 'external law' (11 O.S.Supp.1977, § 49–109)? The undersigned believes the latter course is the better because he believes it more correctly reflects the parties' original intent. Moreover, he also believes that in order for certain of the agreement's sections to have a full and complete meaning it is necessary that 'external law' be utilized .... "

■ Reduced to its essence, the issue here presented is simply this: In interpreting and applying the terms of a collective bargaining agreement wherein the interpretation and application of the provisions of the agreement are final and binding on the parties to the agreement, and where the meaning of the provisions of the agreement as determined within the four corners of the agreement is unclear and uncertain, may the arbitrator find and determine that "external statutory law" was within the contemplation of the contracting parties, and when applied to the facts as determined by the arbitrator both clarify and establish the interpretation and application of the provisions of the agreement as ap-

plied to such facts? We answer in the affirmative.

In so determining, we specifically point out that it is not the *interpretation* of 11 O.S.Supp.1977, § 49–109 which is challenged by the City, but rather its *applicability* as an aid to the arbitrator in determining the interpretation and application of the provisions of the agreement to the facts which is placed in issue.

The courts generally look with favor upon arbitration statutes and contracts as a shortcut to substantial justice with a minimum of court interference.[3]

Art. 7, § 9 of the collective bargaining agreement provides:

"With respect to the interpretation, enforcement, or application of the provisions of the Agreement, the decisions, findings, and recommendations of the arbitrator shall be final and binding on the parties to this Agreement; however, the authority and responsibility of Employer as provided by the Charter of the City of Tulsa shall not be usurped in any manner unless specifically amended or modified by this Agreement."[4]

■ By the express terms of the collective bargaining agreement the interpretation or application of the provisions of the agreement were placed within the exclusive province of the arbitrator. A necessary concomitant to the interpretation or application of the provisions of the agreement was the application of "external statutory law" in arriving at the meaning of the terms of the agreement. Having acted within the powers delegated to it by the agreement, the arbitrator made the determination enjoined upon it. The courts will not vary an arbitration award which is contested on the merits of the controversy submitted to the arbitrator or on the sufficien-

---

3. *Association of Class. Teach. v. Independent S. D. # 89*, Okl., 540 P.2d 1171, 1176 (1975).

4. See also 11 O.S.Supp.1977, § 51–111 making the arbitrator's determination final, and *Mid-*

cy of the evidence upon which the arbitrator based its decision.[5]

As we said in *Association of Class. Teach. v. Independent S. D. # 89, supra,* p. 1176:

"The Negotiation Procedural Agreement (here the collective bargaining agreement) under consideration in this case is the product of statutory authorization and the intent of the parties, therefore is governed by both the statutes and the written agreement itself and the terms of the statute serve as a guide for interpretation of an arbitration agreement."

We will next consider whether the assumption of original jurisdiction and the issuance of a writ of mandamus is appropriate remedy.

The public policy clearly enunciated in the Oklahoma statutes pertaining to collective bargaining and fire and police arbitration (11 O.S.Supp.1977, §§ 51–101, 51–111) is to accord to the permanent members of a police or fire department all of the rights of labor, but protect the public health, safety and welfare by withdrawing from that labor force the right to strike or to engage in any work stoppage or slowdown. The statutes express the clear legislative intent for any disputes arising from the interpretation or application of the binding agreement to have an "immediate and speedy resolution" by required mediation.[6]

In *Association of Class. Teach. v. Independent S. D. # 89, supra,* we said:

"The question of whether a remedy is adequate is one of fact to be determined by the court as a matter of discretion in

the light of the facts of the particular case.

\*　\*　\*　\*　\*　\*

"Mandamus ordinarily will not lie to enforce contractual rights, but where a contractual obligation is also imposed by law it may be enforced by mandamus."[7]

▋ A writ of mandamus may not be issued where there is a plain and adequate remedy in the ordinary course of the law.[8]

In awarding or denying writs of mandamus, courts exercise judicial discretion and are governed by what seems necessary and proper to be done under the facts of each case for the attainment of justice.[9]

▋ In the light of the public policy and declared legislative intent that any disputes arising from the interpretation or application of a binding agreement to have an immediate and speedy resolution, together with the public interest in an orderly, expedited, and harmonious disposition of disputes arising out of collective bargaining agreements between the city and its firefighters, we hold that a writ of mandamus is an appropriate remedy under the facts and circumstances of this case.

Finally, Petitioners allege: "Respondent's refusal to implement Arbitrator Williams' award in this matter is not founded upon any arguable legal basis and constitutes bad faith, vexatious conduct on the part of the City of Tulsa toward the Petitioners," such to require this Court to award attorneys' fees against the City.

▋ As a general rule, attorney fees to a prevailing party are not recoverable in the absence of a statute or an enforceable

---

west *City v. Harris,* Okl., 561 P.2d 1357, 1359 (1977).

**5.** *Funk v. Funk,* 6 Ariz.App. 527, 434 P.2d 529 (1968), cert. denied, 393 U.S. 829, 89 S.Ct. 95, 21 L.Ed.2d 100.

**6.** *Midwest City v. Harris,* Okl., 561 P.2d 1357 (1977); *Voss v. City of Oklahoma City,* Okl., 618 P.2d 925 (1980).

**7.** *Way v. Grand Lake Ass'n, Inc.,* Okl., 635 P.2d 1010 (1981).

**8.** *Way v. Grand Lake Ass'n, Inc., id.;* 12 O.S. 1971, § 1452.

**9.** *State of Okl. ex rel. Poulos v. State Bd. of Equal.,* Okl., 552 P.2d 1134 (1975).

contract.[10] No evidence has been presented in this case that the City of Tulsa has acted in bad faith, vexatiously, wantonly, or for oppressive reasons such as to bring this case within the limited exception to the general rule enunciated in *City Nat. Bank & Trust Co. v. Owens, supra.* Petitioners' application to assess attorney fees against the City of Tulsa is therefore denied.

Original jurisdiction is hereby assumed. A writ of mandamus is hereby issued ordering and directing the City of Tulsa to recognize and implement the arbitration award.

IRWIN, C. J., BARNES, V. C. J., and DOOLIN, HARGRAVE and WILSON, JJ., concur.

OPALA, J., who would not assume original jurisdiction, concurs in the judgment.

HODGES and SIMMS, JJ., dissent to the Court's assuming original jurisdiction.

10. *City Nat. Bank & Trust Co. v. Owens,* Okl., 565 P.2d 4 (1977).