**CITY OF YUKON, Oklahoma, a municipal corporation, Appellant,**

v.

**INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 2055, an unincorporated association; and Mark Casey, Appellees.**

No. 72721.

Supreme Court of Oklahoma.

May 22, 1990.

**1178**

Charles W. Ellis, Lawrence, Ellis & Harmons, P.A., Oklahoma City, for appellant, City of Yukon, Okl.

James R. Moore, Horning, Johnson, Rove, Moore & Hulett, Oklahoma City, for appellee International Ass'n of Firefighters, Local No. 2055.

SUMMERS, Justice:

A firefighter in Yukon filed a grievance through his Union that the City had failed to pay him for overtime at the agreed rate of time and a half. The City of Yukon claimed he was being paid exactly what was allowed under the applicable Collective Bargaining Agreement. His grievance was submitted to an arbitrator as was required by that Agreement. The arbitrator interpreted the Agreement in favor of the firefighter. The City filed a District Court suit to declare the arbitrator's award void, but the District Court upon motions for summary judgment declined to do so. On the City's appeal we now affirm the lower court, and leave intact the decision of the arbitrator.

The question comes up because in *Garcia v. San Antonio Metropolitan Transit Auth.*, 469 U.S. 528, 537, 105 S.Ct. 1005, 1010, 83 L.Ed.2d 1016 (1985) the United States Supreme Court held that the Fair Labor Standards Act[1] (FLSA) applies to cities and towns. The FLSA provides that certain employers must pay their employees a premium rate of one and a half times the employee's regular rate of pay for work in excess of a 40 hour work week.[2] Due, however, to the peculiar nature of

firefighters' work schedules, under the Act an employer is allowed to select a work period of up to 28 days in which the firefighter may work up to 212 hours before the overtime pay rate kicks in.[3]

The City of Yukon, in an understandable effort to avoid paying their firefighters at the higher rate, implemented a plan whereby firefighters would take a certain amount of leave in each work period, and in addition be given four hours of administrative leave with pay in certain work periods where they otherwise would work 216 hours. The effect was to reduce the compensable time worked for each such 28 day period to 212 hours, and avoid payment at time and a half.

A Collective Bargaining Agreement was consummated between the City of Yukon and Local 2055, International Association of Firefighters. It provided that employees "of the Fire Department shall receive time and one-half their hourly rate of pay ... for all overtime ...." (Art. 14, Sec. 3) It also provided that "a work week shall be an average of 56 hours." (Art. 19) A series of 56 hour work weeks will, of course, amount to more than 212 hours in a 28 day span, but the "leave" program referred to in the previous paragraph served generally to allow employees to be paid at the normal rate.

Mark Casey was the firefighter who considered himself aggrieved. In a work period where he was given four hours of administrative leave with pay he was called back due to a snow emergency and worked an extra four hours, making 216 hours worked. The City took the position that since he was compensated for 216 hours in that pay period it owed him an extra one-half times his regular pay for those four hours. Casey and the Union claimed the four hours of overtime work deserved compensation at time and a half the regular rate, and cited Art. 14 Sec. 3 of the Agreement in support.

---

1. 29 U.S.C. § 201 et seq.

2. 29 U.S.C. § 207(a).

3. 29 U.S.C. § 207(k).

The Collective Bargaining Agreement expressly provided for mandatory arbitration of employee's grievances. Art. 4, Sec. 5. Such binding arbitration is required by the state Fire and Police Arbitration Act, wherein the employees are denied by law the right to strike. 11 O.S.1981 § 51–101 et seq. and specifically § 51–111. See *City of Midwest City v. Harris*, 561 P.2d 1357, 1358 (Okl.1977). Thus, as stated in the Agreement, the arbitrator's task was to interpret the Collective Bargaining Agreement and ascertain if Casey was entitled to pay for the extra four hours worked at half time or time and a half. The arbitrator decided it should be at time and a half, and the District Court left that decision undisturbed.

The City urges on appeal that the arbitrator P.M. Williams' decision is not binding because it exceeded the authority given to him by the agreement and the statutes. In support of this argument, the City urges that the state courts apply a stricter standard than that in the federal court. The Union disagrees, pointing out that the agreement provided for final and binding arbitration, and that the arbitrator was interpreting the contract. The Union asserts that this appeal is merely a way for the City to re-litigate the merits of the decision because they are dissatisfied with the results. The parties disagree first as to the extent of this courts' permissible review of an arbitrators' award. Secondly they differ on whether the arbitrators' decision was within his authority.

 As to our scope of review, the City argues that this Court has adopted a broader power of review than is present in the federal courts. We must disagree. In *Voss v. City of Oklahoma City*, 618 P.2d 925, 928 (Okl.1980), we specifically adopted the review standard set forth by the U.S. Supreme Court in the *Steelworkers Trilogy*. *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise*

*Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Once it is established that there is a collective bargaining agreement with an arbitration clause broad enough to include the dispute the role of this Court is strictly limited to determining whether the arbitrator exceeded his authority under the collective bargaining agreement. *Voss v. City of Oklahoma City, supra, W.R. Grace Co. v. Local Union 759*, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298; *Amer. Postal Workers v. United States Postal Serv.*, 789 F.2d 1, 5 (D.C.Cir.1986). Affording great deference to the decision of the arbitrator, we will not review the factual or legal findings of the arbitrator nor consider the merits of the award. *Georgia-Pacific Corp. v. Local 27*, 864 F.2d 940, 944 (1st Cir. 1988); *Campo Machining Co., Inc. v. Local Lodge No. 1926*, 536 F.2d 330, 332 (Okla.1976). "The fundamental purpose of arbitration is to preclude court intervention into the merits of disputes when arbitration has been provided for contractually." *Voss v. City of Oklahoma City*, 618 P.2d at 927. Hence, this Court may only consider whether the arbitrator's decision "draws its essence from the collective bargaining agreement." *United Steelworkers v. Enterprise Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). *See also Fabricut, Inc. v. Tulsa Gen. Drivers*, 597 F.2d 227, 229 (1979).

> ... [T]he Court made clear almost 30 years ago that the courts play only a limited role when asked to review the decision of an arbitrator. The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract. 'The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.' (Citation omitted) *United Paperworkers Internat'l v. Misco*, 484 U.S. 29, 36 [108 S.Ct. 364, 370, 98 L.Ed.2d 286] (1987).

The goal of judicial review is to insure that the parties receive those things for which they bargained from the arbitrator. *See Nicolet High School Dist. v. Nicolet Educ. Ass'n*, 118 Wis.2d 707, 348 N.W.2d 175, 178 (1984).

Arbitrators have no obligation to the courts to give their reasons for an award. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 58, 94 S.Ct. 1011, 1024, 39 L.Ed.2d 147 (1974). The informality of the process enables it to function at an efficient and expeditious level which facilitates its purpose. *Id.* Courts recognize that at times, the decision of an arbitrator will be ambiguous; ambiguity, however, is no reason to void the decision. *United Steelworkers*, 363 U.S. at 599, 80 S.Ct. at 1362.

An arbitrator's authority and power are both derived from, and limited by the agreement. *Barrentine v. Arkansas–Best Freight System*, 450 U.S. 728, 744, 101 S.Ct. 1437, 1447, 67 L.Ed.2d 641 (1981). His duty is to interpret the agreement so as to give effect to the parties' intent. *Id.* Of course, an arbitrator may look for guidance in many sources, but he must remain faithful to the collective bargaining agreement. *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 53, 94 S.Ct. 1011, 1022, 39 L.Ed.2d 147 (1974); *Garner v. City of Tulsa*, 651 P.2d 1325, 1328 (Okla. 1982). Arbitrators are required to use informed judgment to formulate remedies, and thus must be allowed flexibility in order to meet this goal. *Steelworkers*, 363 U.S. at 597, 80 S.Ct. at 1361. An award which is within the scope of the collective bargaining agreement is as binding as was the agreement authorizing it even if it appears ambiguous. *Id. Voss v. City of Oklahoma City*, supra at 927. Only when the "arbitrator's words manifest an infidelity to this obligation" will courts refuse to enforce the award. *United Steelworkers*, 363 U.S. at 597, 80 S.Ct. at 1361. *See also Alexander*, 415 U.S. at 53, 94 S.Ct. at 1022. "[I]t is the construction of the arbitrator which was bargained for and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers*, 363 U.S. at 599, 80 S.Ct. at 1362.

To determine the limitations of power given to the arbitrator Williams, we look to its source, the Collective Bargaining Agreement:

> "The decision of that arbitrator shall be final and binding upon both parties. The arbitrator must base his decision on facts as ascertained and determined by him and the terms of this Agreement. He shall have no power to render a decision, the effect of which would change or modify any provisions of this Agreement." Article 4, Section 5.

The City urges that arbitrator Williams went beyond his contractual authority by relying in part on a prior arbitration opinion wherein the question of overtime was at issue. In that prior arbitration proceeding the Union had filed a grievance regarding the contract provision which stated that a "work week shall be an average of 56 hours." The Union urged that this provision constituted an election of a seven day work week under the Fair Labor Standards Act. The City disagreed, stating that this merely stated an average of time worked due to the unique circumstances of firefighters. The earlier arbitrator, B. Goodstein, declined to find that this provision was an election under the Fair Labor Standards Act. He also held that the City could make a unilateral election as to the work period to be used.

In reaching the result at issue in the present case, arbitrator Williams referred to the Goodstein arbitration and held that the prior arbitration served as explanation of the intent of the parties regarding overtime wages. Relying in part on the prior arbitration decision, he found in favor of the Union and ordered the City to pay time and one-half for overtime. The City claims that this holding was outside the arbitrator's authority for two reasons: (1) the incorporation of the Goodstein arbitration decision "changes" the agreement of the parties, and (2) reliance on this opinion effectively incorporates the Fair Labor Standards Act into the contract.

■ We disagree with the City's conclusions. First, the arbitrator's reliance on the Goodstein order did not change or modify the agreement between the parties. The Goodstein award merely interpreted the "56–hour work week" provision. By relying on this interpretation, Williams was performing his contractual duty of interpreting the specific terms of the collective bargaining agreement. To remain consistent with the parties' intent, he looked for guidance in the Goodstein opinion. Such was authorized by the agreement. *See Alexander*, 415 U.S. at 53, 94 S.Ct. at 1022.[4] His decision did not change or modify the agreement of the parties, but merely construed the various provisions in order to reach a decision. The award was "not contrary to the express language of the agreement, and [has] rational support." *See Fabricut*, 597 F.2d at 229.

■ As to the City's second argument that by implication, he incorporated the Fair Labor Standards Act into the agreement, we turn to *Garner, supra.* In *Garner,* a city fireman and his bargaining agent brought an action challenging the city's refusal to honor an arbitration award. The City argued that the award was not binding insofar as the arbitrator had exceeded his authority by relying on statutory law. This Court upheld that decision, stating as follows:

> By the express terms of the collective bargaining agreement the interpretation or application of the provisions of the agreement were placed within the exclusive province of the arbitrator. A necessary concomitant to the interpretation or application of the provisions of the agreement was the application of 'external statutory law' in arriving at the meaning of the terms of the agreement. Having acted within the powers delegated to it by the agreement, the arbitrator made the determination enjoined upon it. *Id.*

*Garner* is directly applicable to the case at bar. In order to remain faithful to his duty as arbitrator, Williams looked to other sources, including a previous arbitration award which addressed the Fair Labor Standards Act, to arrive at the meaning of the terms of the agreement. We do not believe that this action "manifest[s] an infidelity to this obligation." *See United Steelworkers*, 363 U.S. at 597, 80 S.Ct. at 1361.

The arbitrator's decision was not based solely on his view of the requirements of legislation, but considered the express language of the collective bargaining agreement. *See Alexander*, 415 U.S. at 53, 94 S.Ct. at 1022. His award appears to be based on his interpretation and judgment as to the meaning of the language in the agreement. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," this Court has no power to reverse his decision, even if we were convinced the the decision was error. *United Paperworkers*, 484 U.S. at 37, 108 S.Ct. at 370.

Accordingly, we find that the arbitrator's decision was well within the authority granted to him by the Collective Bargaining Agreement. The district court's summary judgment in favor of the firefighter and his Union is affirmed.

All Justices concur.

---

**4.** There is no allegation that the Goodstein award was in excess of the arbitrator's authori- ty. That question is not before this Court.