**LOCAL NO. 2929 INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, AFL–CIO/CLC, Appellee,**

v.

**The CITY OF DUNCAN, Oklahoma, a Municipal Corporation, Appellant.**

**No. 76323.**

Court of Appeals of Oklahoma, Division No. 2.

July 20, 1993.

Certiorari Denied Nov. 30, 1993.

James R. Moore, Cheryl Hargraves, Horning, Johnson, Grove, Moore, Hulett & Thompson, Oklahoma City, for appellee.

John Hauck, Jr., Lytle, Soule & Curlee, Oklahoma City, for appellant.

BRIGHTMIRE, Judge.

The dispositive issue presented for review is whether the trial court erred in entering a judgment enforcing an arbitrator's award of merit pay based on a finding that a municipality had breached the terms of a collective bargaining agreement between it and a firefighters' union.

We hold it did not err and affirm the judgment.

## I

On April 22, 1986, employer City of Duncan, Oklahoma, entered a written collective bargaining agreement (CBA) covering the terms and conditions of employment between the City and the International Association of Firefighters Local No. 2929, AFL–CIO/CLC. The agreement was to be effective from July

1, 1986, through June 30, 1987, "or until replaced by a successor agreement."[1]

■ The City expressly retained its charter-based[2] departmental management rights *except* to the extent that they were "abridged, delegated, granted or modified" by the agreement. Among the enumerated retained rights are the City's right to "control ... the departmental budget" and act as the "sole judge of the qualifications of applicants." CBA, art. IV(H) and (M).

Under the terms of CBA art. XXIV, the union agreed that "compensation to be paid to members of the bargaining unit will be in accordance with the city-wide pay plan and classification schedule formally adopted by the City Council ... in May of 1985." Attached as "Addendum No. 1" was a schedule of "pay plan grade levels" with each step equal to a five percent salary increase.

Chapter IV of the City's pay plan calls for the plan to be "adjusted periodically" with the caveat that "annual adjustments to be provided to City employees *must reflect City objectives and respond to financial conditions.*"[3] Included among the annual adjustments are merit increases which the plan explained as follows:

"In addition to the annual cost of living adjustments, employees below or within their assigned salary grade would also be *eligible* for an annual merit adjustment.... recommended in response to the City's desire to identify and reward for outstanding individual performance. The merit adjustment, *when granted to an employee,* results in at least one full step movement by the employee within his as-signed salary grade. Each step movement represents a 5% increase in base salary." (Emphasis added.)

The next subsection, entitled "Determining Amount of Annual Adjustments" states that:

"As part of the annual budgeting process, the City currently develops percentage increases provided to all employees across-the-board. Implementation of our recommendations requires the City to develop two distinct salary adjustment amounts:

- Structure adjustments (cost of living) which are available to all employees; and

- Merit adjustments *which may or may not be awarded* to each employee throughout the year.

Since *merit adjustments should be tied to performance evaluation,* the employees' hire date anniversary would be logical timing for merit adjustment consideration. (Emphasis added.)

In the CBA's art. XXIV the parties incorporated the foregoing provisions except for the anniversary date which, in section 4, they changed from the date of employment to a universal "anniversary date" of January 1, 1987.

The union made demand in January 1987 for the City to pay the merit increases. The City complained of financial constraints and the parties agreed to defer the matter until June 5, 1987, at which time the City provided the bargaining agent with documentation demonstrating its inability to pay the increases to the union and *all other City employees.*

The matter was submitted to arbitration in accordance with the grievance procedures

---

**1.** By law, unless written notice of a request to renegotiate the terms of a municipal police or fire department collective bargaining agreement is received thirty days before the anniversary date of the agreement, the one-year limitation for such agreements is extended and the terms thereof "shall continue from year to year and be automatically extended for one-year terms...." 11 O.S.1991 § 51–105.

**2.** A city's charter "becomes the organic law of such city." Okl. Const. art. 18, § 3(a). As such it is analogous to a constitution and supersedes the laws of the state regarding "merely" municipal affairs. *Lackey v. State,* 29 Okl. 255, 116 P. 913 (1911). While the right provided in the Fire and Police Arbitration Act to negotiate the terms and conditions of employment with a collective voice is a matter of statewide concern, matters such as longevity pay are of purely local concern. *Oliver v. City of Tulsa,* 654 P.2d 607, 609 (Okl. 1982).

**3.** Emphasis added.

outlined in the CBA and was heard by an independent arbitrator February 2, 1988. On March 21, 1988, the arbitrator (1) found that the City had breached the terms of the CBA; (2) found that the union's grievance had merit in that "[a]ll eligible members of the bargaining unit all advanced one step in their pay grade retroactive to January 1, 1987 and continued as provided for under the collective bargaining agreement"; and (3) awarded such merit pay to the eligible members.

The City refused to abide by the arbitrator's award so, on July 21, 1988, the union filed a petition in district court seeking an enforcement order, interest on the amount owed, costs and an attorney fee. The City counterclaimed seeking a judgment declaring (1) the award void because the arbitrator exceeded his authority and (2) the City's right to deny merit increases due to "existing fiscal emergency."

In a letter dated April 7, 1989, the court overruled the union's motion for summary judgment. The issues of "liability and damages" were bifurcated and on July 26, 1989, a non-jury trial was held with regard to the enforceability of the award.

In a letter dated August 29, 1989, the judge informed the parties that, based upon "a review of the agreed facts, records and files in this matter," he found "in favor of the Firefighters on their petition and against the City on its counterclaim."[4] The court found that the "opinion" of the arbitrator:

"does not exceed the grant of authority, establish provisions of a new agreement, establish variations to the agreement in force, or arbitrate away a provision, provisions or amendments to the agreement. Further, the arbitrator's award was not

contrary to the express language of the contract, was not contrary to law, or against public policy."

On August 23, 1989, the court also awarded the union an attorney fee of $5,500. The City appeals.

## II

The City's main complaint is the trial court's refusal to conclude that the arbitrator "acted outside the scope of his authority" in issuing the award he did.[5]

The argument is that the trial court endorsed the arbitrator's rewriting of the CBA by imposing an obligation on the City to grant firefighters annual merit pay increases—an obligation which the agreement did not create. Indeed, continues the City, the CBA reserves to the City all of the rights contained in the city charter which include the right to regulate wages, salaries and fiscal policy.

We disagree with the City's hypotheses both as to its rights under the agreement and as to the legal authority of the arbitrator to resolve the issues arising out of the union's grievance.

■■■ To begin with it is settled decisional law that once it is established that there exists a collective bargaining agreement with an arbitration clause broad enough to include a given dispute, the role of the court is strictly limited to determining whether the arbitrator exceeded his authority under the collective bargaining agreement. Such authority is derived from and circumscribed solely by the terms of the collective bargaining agreement.[6] Great deference is given to the decision of the arbitrator with respect to

**4.** The terms of this letter were later memorialized in a journal entry of judgment filed September 26, 1989.

**5.** The City's argument—that the award is in violation of our state constitution—is improperly raised for the first time on appeal and will not be

considered. *Helfinstine v. Martin,* 561 P.2d 951 (Okl.1977).

**6.** *Barrentine v. Arkansas–Best Freight System,* 450 U.S. 728, 744, 101 S.Ct. 1437, 1447, 67 L.Ed.2d 641 (1981).

his factual or legal findings, and in any event the merits of an award will not be considered.[7] Thus, if the arbitrator's award is within the scope of the agreement, it is as binding as the agreement authorizing it, even if it appears ambiguous.[8] It is the construction of the arbitrator which was bargained for and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.[9] It is only when the arbitrator's words manifest an infidelity to this obligation that courts will refuse to enforce the award.[10]

■ With the foregoing in mind we turn to the City's assignment of error. The first thing to do is examine the provisions of subject agreement which establish the arbitrator's authority and define the force and effect of his decisions. They are found in section 4 of art. VI, entitled "Grievance Procedure." They read:

"(5) With respect to the interpretation, enforcement or application of the provisions of this Agreement, the decision, findings, and recommendations of the arbitrator shall be final and binding upon the parties to this Agreement.

(6) The arbitrator's authority shall be limited to the interpretation and application of the terms of this Agreement and/or any supplement thereto. The arbitrator shall have no jurisdiction to establish provisions of a new Agreement or variation of the present Agreement or to arbitrate away, in whole in part [*sic*], any provisions or amendments thereof."

The City argues that the effect of the arbitrator's decision was to divest the City of its right to control the departmental budget and such right was specifically reserved in the agreement to enable the City to carry out its charter and constitutional responsibilities.

We disagree. It is true, of course, that under the terms of the collective bargaining agreement the City expressly retained certain enumerated rights, including the right to control the fire department's budget, but it also true that the City agreed to certain parameters with regard to such retained rights as to matters which the City agreed were to be subjects of negotiation and arbitration. And one such matter is found in art. XXIV which includes the City pay plan *in toto,* including merit raises, with the modification of the anniversary date. It follows then that the subject of merit raises is specifically covered by the agreement.

This conclusion is further supported by the fact that subject CBA does not contain a provision expressly *excluding* the subject of merit increases from binding arbitration. Nor is there a specific statutory or constitutional provision prohibiting the City from delegating decisions on that subject to an arbitrator. As a result, the court is bound to enforce the agreement of the parties as specified in art. VI, section 2 in an effort to achieve the goal of 11 O.S.1991 § 51–111— swift resolution of disputes involving the interpretation of provisions of collective bargaining agreements through mandatory arbitration.[11]

The foregoing result is in accord with the 1990 pronouncement of the high court when it said that in the absence of "an express provision in the agreement removing a certain grievance from arbitration, 'only the most forceful evidence' of the parties' intent not to arbitrate a claim prevails. *This proves especially true in the presence of a vague exclusion clause and a broad arbitra-*

**7.** *City of Yukon v. Firefighters Local 2055,* 792 P.2d 1176, 1179 (Okl.1990).

**8.** *United Steelworkers of America v. Warrior and Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

**9.** *City of Yukon v. Firefighters Local 2055,* 792 P.2d at 1180 (quoting *United Steelworkers,* 363 U.S. at 599, 80 S.Ct. at 1362).

**10.** *Id.*

**11.** *City of Muskogee v. Martin,* 796 P.2d 337 (Okl.1990).

*tion provision."* [12]  We do not find in the record any such "forceful evidence" of an intent not to arbitrate the subject of merit increases.

### III

The judgment of the district court enforcing the arbitrator's award and assessing a reasonable attorney fee as part of the costs against the City is therefore affirmed.

**AFFIRMED.**

REIF, V.C.J., and RAPP, P.J., concur.

---

12. *Id.* at 341 (quoting *United Steelworkers of America v. Warrior and Gulf Navigation Co.,* 363 U.S. at 584–85, 80 S.Ct. at 1354) (footnotes omitted) (emphasis added).