**CITY OF MINNEAPOLIS, Appellant,**

v.

**POLICE OFFICERS' FEDERATION OF MINNEAPOLIS, Respondent.**

No. C3-96-2369.

Court of Appeals of Minnesota.

July 1, 1997.

John M. LeFevre, Jr., Robert A. Alsop, Kennedy & Graven, Minneapolis, for appellant.

Gregg M. Corwin, Karin E. Peterson, Gregg M. Corwin & Associates, St. Louis Park, for respondent.

Richard L. Kaspari, Garber & Metcalf, P.A., Minneapolis, for amicus curiae Minnesota Federation of Teachers.

Harley M. Ogata, Minnesota Education Association, St. Paul, for amicus curiae Minnesota Education Association.

Ronald L. Rollins, Jean E. Boos, Krause & Rollins, Minneapolis, for amici curiae Middle Management Association; Minnesota Association of Professional Employees and Law Enforcement Labor Services, Inc.

Considered and decided by
KALITOWSKI, P.J., TOUSSAINT, C.J., and
SCHULTZ*, J.

## OPINION

HAROLD W. SCHULTZ, Judge.

The district court awarded summary judgment in favor of respondent, confirming the arbitrator's decision to reinstate police officer Michael Sauro to the Minneapolis Police Department. Appellant argues the arbitrator exceeded his authority under the parties' collective bargaining agreement and that the arbitration award violates well-defined, dominant public policies. We affirm.

## FACTS

This case arises from the arrest of Craig Mische by Sauro on New Year's Eve 1990 and the morning of January 1, 1991, at a Minneapolis nightclub formerly known as Juke Box Saturday Night. Mische alleged that while he was in custody, Sauro beat him with his fists and feet. As a result, Mische suffered facial lacerations, bruising, swelling, and bleeding.

Mische filed suit in federal district court against Sauro and the City of Minneapolis, as his employer, alleging claims under 42 U.S.C. § 1983 for various constitutional violations resulting from Sauro's conduct. The jury returned a special verdict, finding that Sauro had committed acts of excessive force after Mische was handcuffed and that Sauro's employer, the City of Minneapolis, had maintained a custom of deliberate indifference to complaints concerning the use of excessive force by Minneapolis police officers. United States District Court Judge Richard Kyle adopted the jury's verdict and ordered judgment in Mische's favor. *Mische v. Sauro,* No. 3–94–217 (D.Minn. Aug. 17, 1994) (memorandum opinion and order adjudicating posttrial motions).

Following the jury verdict, the Minneapolis Police Department Internal Affairs Division (IAD) conducted an investigation of Sauro's conduct for disciplinary purposes. On December 29, 1994, after the IAD's investigation was completed, then-Police Chief John Laux reversed the IAD recommendation that the charges against Sauro not be sustained and concluded Sauro had violated three separate rules of the Minneapolis Police Department. Chief Laux imposed a 20–day unpaid disciplinary suspension against Sauro.

On January 19, 1995, after reviewing Chief Laux's disciplinary action against Sauro and after receiving a legal opinion from the Minneapolis City Attorney and independent

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

counsel, Minneapolis Mayor Sharon Sayles Belton notified Sauro of her intent to terminate his employment with the city. On January 31, 1995, Mayor Belton formally notified Sauro, in writing, that he was terminated from the Minneapolis Police Department. According to Mayor Belton, the evidence was clear and convincing that Sauro beat and kicked Mische while Mische was handcuffed on the floor of Juke Box Saturday Night. This constituted "gross misconduct" and "severe initial misconduct" in violation of the rules of the Minneapolis Civil Service Commission and warranted his termination.

Sauro, through the Police Officers' Federation of Minneapolis (Federation), filed grievances under the parties' collective bargaining agreement (CBA), challenging his suspension and termination. The grievances proceeded to arbitration. The arbitration hearing began on September 18, 1995, and concluded on October 5, 1995. The parties' submission of the issues stated that the arbitrator was to decide: (1) whether there was just cause warranting Sauro's discharge under the labor agreement, and (2) if not, what discipline, if any, was appropriate.

On December 11, 1995, the arbitrator issued his award. He concluded the city had failed to prove by clear and convincing evidence that Sauro had used excessive force against Mische and reinstated Sauro to his former position and rank. Deferring to Chief Laux's professional judgment, the arbitrator upheld the 20-day suspension given Sauro by Chief Laux.

On March 11, 1996, the city commenced an action in Hennepin County District Court, seeking to vacate the arbitrator's award pursuant to Minn.Stat. § 572.19, subd. 1(3) (1996). The city claimed the arbitrator exceeded his authority and that the reinstatement violated well-defined and dominant public policies. On August 14, 1996, after hearing the matter on cross-motions for summary judgment, the district court denied the city's motion and confirmed the arbitrator's award reinstating Sauro. The district court concluded that there was no legal basis to conclude the arbitrator exceeded his authority or violated the essence of the parties' CBA. The district court also ruled that there

is no well-defined and dominant public policy requiring the automatic discharge of a police officer who was found to have used excessive force by a civil jury. This appeal follows.

## ISSUES

I. Did the arbitrator exceed his authority under the parties' CBA?

II. Does the arbitrator's decision violate well-defined and dominant public policies?

## ANALYSIS

### I.

■ The city argues that the arbitrator's award should be vacated because he exceeded his authority under the parties' CBA. The city claims the arbitrator's decision does not draw its "essence" from the CBA because: (1) the arbitrator disregarded the most direct evidence of Sauro's misconduct by completely ignoring the *Mische* verdict, (2) his award modifies the terms of the CBA, (3) the arbitrator abdicated his responsibilities as an arbitrator by failing to review the evidence submitted to him, and (4) he issued an award that is factually inconsistent and ambiguous.

■ Arbitration is a proceeding favored in the law. *Ehlert v. Western Nat'l Mut. Ins. Co.*, 296 Minn. 195, 199, 207 N.W.2d 334, 336 (Minn.1973). When evaluating challenges to the scope of the arbitrator's powers under Minn.Stat. § 572.19, subd. 1(3) (1996), this court's review is very limited. *State Auditor v. Minnesota Ass'n of Prof'l Employees*, 504 N.W.2d 751, 755 (Minn.1993). The scope of the arbitrator's authority is a matter of contract to be determined from a reading of the parties' arbitration agreement. *Children's Hosp., Inc. v. Minnesota Nurses Ass'n*, 265 N.W.2d 649, 652 (Minn.1978). It is well-established that

an arbitrator, in the absence of any agreement limiting his authority, is the final judge of both law and fact, including the interpretation of the terms of any contract, and his award will not be reviewed or set aside for mistake of either law or fact in the absence of fraud, mistake in applying

his own theory, misconduct, or other disregard of duty.

*Cournoyer v. American Tel. & Radio Co.,* 249 Minn. 577, 580, 83 N.W.2d 409, 411 (1957) (footnotes omitted). Only where it is clearly established that the arbitrator exceeded his authority must a court vacate an award. *State v. Berthiaume,* 259 N.W.2d 904, 910 (Minn.1977).

Arbitrability is not at issue in the present case. The parties stipulated to the arbitrability of this matter at the hearing. Therefore, the only issue before this court is whether the arbitrator's decision draws its "essence" from the parties' CBA. *See Ramsey County v. AFSCME, Council 91, Local 8,* 309 N.W.2d 785, 790 (Minn.1981) (holding that once arbitrability is established, the only question before a reviewing court is whether the arbitrator's decision meets the "essence" test or if it merely manifests the arbitrator's personal notion of justice).

An arbitration award draws its "essence" from the CBA and will be upheld if it is rationally derived from the CBA viewed in the light of the CBA's language, its context, and other indicia of the parties' intent, including past practice. *Id.* at 790.

> [O]nly where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.

*Id.* at 792 (quoting *Amoco Oil Co. v. Oil, Chemical & Atomic Workers,* 548 F.2d 1288, 1294 (7th Cir.1977), *cert. denied* 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389 (1977)).

There is nothing in the record to suggest that the arbitrator made his award in manifest disregard of the parties' CBA, the principles of contract construction, or in breach of the law of the shop. Pursuant to Section 2.1 of the CBA between the city and the federation, "the City will discipline employees who have completed the required probationary period only for just cause." The CBA, however, does not specifically define "just cause." Where the CBA does not define the meaning of "just cause" or limit the available remedies, the arbitrator is free to adopt a reasonable definition and to craft a

remedy that does not conflict with the terms of the agreement. *State Auditor,* 504 N.W.2d at 755. This decision is left to the arbitrator and the role of the reviewing court is "solely to determine whether specific language in the agreement or submission precludes [the arbitrator's decision]." *Id.* (citation omitted).

The city claims that the arbitrator modified the terms of the parties' CBA and thereby exceeded his authority by ignoring the *Mische* decision and by requiring the city to prove Sauro's misconduct by clear and convincing evidence. The city, however, ignores the fact that during the arbitration hearing, it stipulated that it was required in that proceeding to prove Sauro's misconduct by clear and convincing evidence. The city also, by its own admission, agreed that the *Mische* decision was not binding on the arbitrator. During the arbitration hearing, the city argued that it had the right to be heard on the substantive issues of the *Mische* case and to present live testimony in that regard. The arbitrator made clear that by agreeing to be heard on the substantive issues of the *Mische* case, *Mische* would not be res judicata and that the arbitration would be de novo. The city stated that it understood the arbitrator's ruling and agreed to proceed with the arbitration. After receiving and considering the evidence presented by the city, the arbitrator concluded that the city had failed to meet its burden. Whether we agree with the arbitrator's decision, we are bound by his factual determinations and interpretation of the law. *See City of Bloomington v. Local 2828,* 290 N.W.2d 598, 602 (Minn.1980) (holding that courts may not overturn an arbitration award merely because they disagree with the decision on the merits).

Similarly, there is no merit to the city's contention that the arbitrator's use of the clear and convincing standard materially modified the terms of the CBA. There is nothing in the parties' CBA that precluded the arbitrator from using the clear and convincing standard or that required him to apply a different standard.

The city also claims the arbitrator exceeded his authority by improperly considering evidence both on and off the record. Specifi-

cally, the city contends that the arbitrator abdicated his responsibilities as an arbitrator by refusing to review all the depositions or trial transcripts submitted to him during the arbitration proceeding and that he disregarded all the eyewitness testimony in arriving at his decision, instead relying almost exclusively on the medical records and testimony of the attending physician in the emergency room at the HCMC. We disagree.

The city's argument disregards the lengthy and detailed decision issued by the arbitrator. His decision reflects a careful and detailed examination of the reliability and credibility of the witnesses who testified during the arbitration hearing and the *Mische* trial. It also shows a detailed consideration of the live testimony of Mische; Sauro; Dr. Sterner, the supervising emergency room physician; former Chief Laux; Glen Murphy, a nationally recognized "use of force" expert; and the trial testimony of Louis Reiter, another "use of force" expert.

We are also unpersuaded by the city's contention that the arbitrator improperly considered his personal experiences in reaching his decision. The arbitrator did not base his decision solely, or even in significant part, on his personal experiences. He simply noted that the expert opinions of Dr. Sterner, Laux, and Murphy corresponded to his experience as a competitive boxer and Marine Corps policeman. The arbitrator observed that, "[i]n light of such experiences, I fully appreciate the validity of the expert opinions of Sterner, Laux, and Murphy." The city's argument implies that an arbitrator may not draw upon his or her personal experiences in rendering a decision. We reject such an argument. In many instances, arbitrators are chosen precisely for their personal experience, background, and expertise in a particular area, whether it be business, education, or labor.

Next, the city argues that the arbitrator's decision is internally inconsistent because it upholds Laux's 20–day disciplinary suspension of Sauro, but overturns Mayor Belton's discharge of Sauro when both decisions are based on the same underlying conduct of Sauro. We disagree.

"[J]ust cause" to discipline may not be "just cause" to discharge an employee. *See City of Bloomington,* 290 N.W.2d at 602; *State Auditor,* 504 N.W.2d at 757–58 (recognizing that while employee's conduct would have been sufficient grounds for discharge, the arbitrator, in the absence of any language to the contrary, was free to determine that such conduct was only grounds for disciplining the employee). Further,

the power to fashion a remedy is a necessary part of the arbitrator's jurisdiction unless withdrawn from him by specific contractual language between the parties or by a written submission of issues which precludes the fashioning of a remedy.

*City of Bloomington,* 290 N.W.2d at 603.

The parties' submission granted the arbitrator the authority to determine whether Sauro's conduct constituted just cause to discharge him. If it was not, the arbitrator was granted the authority to determine what discipline, if any, was appropriate. Because the parties gave the arbitrator the authority to determine what, if any, discipline was appropriate, this court may not interfere with his decision. *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 371, 98 L.Ed.2d 286 (1987) (holding that courts have no authority to disagree with the honest judgment of the arbitrator where it is contemplated he will determine the remedies for any violations he finds). Here, Laux determined that Sauro had committed several lapses in police procedure during Mische's arrest. He concluded, however, that these lapses did not warrant Sauro's discharge. The arbitrator deferred to Laux's professional judgment and upheld the 20–day suspension. By his decision, the arbitrator concluded that the city had just cause to discipline Sauro, but not just cause to discharge him. The parties left this decision to the arbitrator, and we may not now interfere with that decision.

Applying the narrow standard of review in arbitration cases, nothing in the parties' CBA precluded the arbitrator from reaching the decision he did. During the arbitration hearing, the parties stipulated to the standard of proof to be used and that the *Mische* decision was not binding on the arbitrator. Further,

because the parties' CBA did not define what constitutes "just cause," the arbitrator was free to adopt a reasonable definition. The record establishes that the arbitrator carefully considered not only the evidence presented during the arbitration proceeding, but also the evidence presented in the *Mische* trial. The arbitrator's decision reflects a careful and detailed consideration of the eyewitness testimony, the expert testimony, the medical reports detailing Mische's injuries, and other documentary evidence. We conclude that the arbitrator did not exceed his authority under the parties' CBA.

## II.

■ The city argues that the arbitrator's award should be vacated on public policy grounds. The city contends the reinstatement of Sauro by the arbitrator, in light of the *Mische* verdict, violates a well-defined public policy of protecting the constitutional rights of arrestees. The city also argues that if the arbitration award were enforced, it would undermine the city's right to manage its police force in such a manner and custom that protects its citizens from such constitutional violations by police officers. We disagree.

■ In limited circumstances, a "public policy exception" may provide a basis for courts to vacate an arbitration award. *State Auditor*, 504 N.W.2d at 756 (citing *Misco*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286); *W.R.Grace & Co. v. Local Union 759, Int'l Union of United Rubber Workers*, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). An arbitration award may be set aside on public policy grounds only if: (1) the collective bargaining agreement contains terms that violate public policy, or (2) the arbitration award creates an explicit conflict with other laws and legal precedents. *State Auditor*, 504 N.W.2d at 756. In determining whether an arbitration award violates public policy, the court looks not to the grievant's conduct, but to whether enforcement of the arbitration award violates some well-defined and dominant public policy. *Id.*

Here, there is no contention that the terms of the CBA violate public policy. Therefore, the question before this court is whether the arbitration award, if enforced, would violate any well-defined and dominant public policy. We conclude that it does not.

The Minnesota Supreme Court addressed the public policy exception in *State Auditor*. In that case, a state auditor, based on his own admission of guilt, was discharged for filing false expense reports. *State Auditor*, 504 N.W.2d at 752. Following arbitration in the matter, the employee was reinstated to his former position. *Id.* at 754. The award was appealed to the district court. The district court vacated the arbitration award, ruling that there was an explicit, well-defined, and dominant public policy against the embezzlement of state funds and that the employee's reinstatement would, in a number of ways, violate the public trust in the state auditor's office. *Id.* at 754.

The supreme court affirmed the court of appeals' reversal of the trial court, holding that neither the parties' CBA nor the arbitrator's award violated public policy. *Id.* at 758. The court ruled that while the employee's conduct appeared to violate a well-defined and dominant public policy against the embezzlement of state funds, it was bound by the arbitrator's factual findings that the continued employment of the auditor would not pose a risk of future similar misconduct or would result in any significant adverse effect to the employer. *Id.* The court concluded that the arbitrator's award, if enforced, would not violate any well-defined, dominant public policy. *Id.*

Here, the city has failed to present any well-defined, dominant public policy that prohibits police officers found to have used excessive force from being reinstated to the police force. It is axiomatic that there is a well-defined and dominant public policy against police officers using excessive force. However, as the district court concluded, there is no well-defined public policy stating that an officer must automatically be discharged if he or she is involved in an excessive force situation.[1]

---

1. Arguably, it could be said that such a policy would be against public policy. Officers called

upon to use force in a particular situation may refrain from doing so, fearful that they may lose

We note that even within the Minneapolis police department there is no well-defined policy or practice that officers found to have used excessive force must be automatically discharged. As the district court found, the record shows several instances where officers found to have used excessive force were disciplined, but not discharged. Thus, the city's own actions do not support the claim that there is a well-defined and dominant public policy against the reinstatement of officers found by civil juries or IAD investigations to have used excessive force.

Likewise, the city's argument that it risks exposure to potential liability, resulting from Sauro's continued employment as a police officer, is based on pure speculation. This is an insufficient basis on which to vacate an arbitration award. "[T]he refusal to enforce an award must rest on more than mere speculation or assumption." *Misco*, 484 U.S. at 44, 108 S.Ct. at 374. Further, any such risk, if it actually did exist, could easily be remedied by removing Sauro from the street and placing him elsewhere. This would be a less restrictive means, and the city, therefore, would not have the risk of potential liability that might result from any future misconduct by Sauro. It would also reduce or eliminate any risk to the public safety.

Finally, if the city were allowed to rely on the *Mische* verdict to justify vacating the arbitration award, it would seriously undermine the arbitration process. The purpose of arbitration is to "encourage and facilitate the settlement of disputes by providing a speedy, informal, and relatively inexpensive procedure for resolving controversies * * *." *Eric A. Carlstrom Constr. Co. v. Independent Sch. Dist. No. 77*, 256 N.W.2d 479, 483 (Minn.1977). The courts have jealously protected this function. The city, in essence, is trying to use the *Mische* verdict to attack collaterally the decision of the arbitrator to circumvent the arbitration process. By relying on the *Mische* verdict to justify vacating the arbitration award, the effect would be to completely disregard the arbitrator's decision. We decline to endorse such a practice.

their job if it were later determined they used excessive force. This could jeopardize the safety

## DECISION

The city has failed to show clearly that the arbitrator exceeded his authority under Minn.Stat. § 572.19, subd. 1(3). Because the CBA does not define the term "just cause" or limit his authority to fashion an appropriate remedy, the arbitrator was free to adopt a reasonable definition and to craft an appropriate remedy if Sauro's conduct did not warrant discharge. We are bound by the arbitrator's factual and legal determinations, and we may not set aside his decision, even if we were to disagree with it. There is nothing in the record showing that the arbitrator's decision was made in manifest disregard for the parties' CBA, the principles of contract construction, or in breach of the law of the shop. In short, nothing in the CBA or the parties' submission precluded the arbitrator from reaching the decision he did.

Further, the city has failed to clearly show any well-defined and dominant public policy prohibiting police officers found by civil juries to have used excessive force from being reinstated to the police force. Accordingly, we decline to vacate the arbitrator's award on the ground that it violates public policy.

**Affirmed.**

of the officer and the public and hinder officers in the performance of their duties.