2014 OK CIV APP 75

**The CITY OF OWASSO, OKLAHOMA, a municipal corporation, Plaintiff/Appellee,**

v.

**FRATERNAL ORDER OF POLICE, LODGE # 149, and Mike Denton, Defendants/Appellants.**

No. 111,441.

Court of Civil Appeals of Oklahoma, Division No. 1.

April 15, 2014.

Certiorari Denied Sept. 11, 2014.

James Patrick Hunt, Tulsa, Oklahoma, for Appellants.

Tony Puckett, Elizabeth Bowersox, McAfee & Taft, A Professional Corporation, Oklahoma City, Oklahoma, for Appellee.

LARRY JOPLIN, Presiding Judge.

¶1 Defendants/Appellants Fraternal Order of Police, Lodge #149, and Mike Denton (respectively, Lodge and Denton, or collectively, Defendants), seek review of an order of the trial court vacating a decision of an arbitrator as contrary to public policy. In this appeal, Defendants complain the parties' collective bargaining agreement expressly proscribes district court review of an arbitrator's decision, and the trial court erred as a matter of both fact and law in holding the arbitrator's decision violated public policy.

¶2 Defendant Mike Denton worked for the Police Department of the Plaintiff City of Owasso pursuant to the terms of a collective bargaining agreement (CBA), and was a member of Defendant Fraternal Order of Police Lodge #149. A seventeen-year employee of the police department, Denton was terminated from the employment on the allegation of his use of excessive force on an arrestee in custody. Defendants filed a grievance to challenge Denton's termination as without just cause as required by the CBA.

¶3 The matter proceeded to a hearing before an arbitrator chosen by the parties. At the hearing, video evidence showed that Denton stepped on the arrestee's head, and struck an arrestee in the face with his elbow or back of his arm three times. Denton averred he struck the arrestee because he believed the arrestee was going to spit on him. City characterized the blows as "elbow strikes," while at least one of three defensive tactics instructors referred to the blows as "more of a poke than a strike." The evidence showed Denton struck the arrestee on the left side of his face, and although the booking photograph of the arrestee showed some injuries to the right side of the arrestee's face, the photo showed no injury to the left side of the arrestee's face.

¶4 On consideration of the testimony and evidence, the arbitrator held that, although "the force Denton used to restrain [the arrestee] was unreasonable and unnecessary," and "[h]ad evidence of injury to [the arrestee] been established, this incident may well have fallen into the excessive force category[,] no such evidence was presented," and "[a]bsent evidence of any injury, ... Denton's conduct in this instance does not rise to the level of excessive force as that term is defined in case law." Considering Denton's commendable work history, lack of prior discipline for use of force, and the department's past "tolerance in meting out discipline when it comes to officer misconduct," "the arbitrator [found] that a written reprimand ... is the appropriate level of discipline." The arbitrator consequently set aside Denton's termination.

¶5 Plaintiff City then filed its petition to vacate the arbitrator's award in the trial court.[1] City asserted the arbitrator exceeded the authority granted under the collective bargaining agreement, and the arbitrator's decision to reinstate a police officer, determined to have used unreasonable force on an arrestee, violated Oklahoma public policy. Defendants objected, argued the collective bargaining agreement expressly proscribed review of the arbitrator's decision "in any court or ... appeal forum," and asserted a counter-claim for enforcement of the arbitrator's decision.

¶6 Defendants then filed a motion for summary judgment. Defendants again asserted the CBA expressly proscribed judicial review of an arbitrator's decision,[2] and that,

1. Following the arbitrator's decision, portions of the video of the subject arrest were "leaked" to local media outlets, and it is alleged that, as a result of the ensuing public outcry, City commenced the proceeding for judicial review.

2. Article 13, Section 5 of the CBA provides:

under the CBA, "[w]ith respect to the interpretation, enforcement or application of the provisions of [the CBA], the decision, findings, and recommendations of the arbitrator [were] final and binding on the parties." Defendants argued the arbitrator's decision to reinstate and reprimand was entirely consistent with the level of discipline previously imposed by the police department in similar cases and implicated no violation of public policy.

¶7 City responded, and also asserted a motion for summary judgment. City argued that police department policy permitted the use of only such force as "reasonable and necessary under the circumstances," specifically defined "excessive force" as "exceed[ing] the degree permitted by law or the policies of" the department, and presumed "the use of excessive force . . . when a peace officer continues to apply physical force in excess of the force permitted by law or said policies . . . to a person who has been rendered incapable of resisting arrest." City pointed out that the arbitrator expressly concluded that Denton applied "unreasonable and unnecessary force" to the handcuffed arrestee, and expressly conceded "Denton's use of unreasonable and unnecessary force [was] an appropriate matter for discipline." City asserted the CBA did not condition termination of the employment upon a finding of "excessive force," and Denton's use of unreasonable and unnecessary force constituted just cause for the termination of his employment under the CBA.

¶8 On consideration of the parties' submissions and argument, the trial court held:
C. [T]he Court agrees that the Arbitrator was allowed to interpret the "law" and "policies" regarding excessive force as outlined in the Collective Bargaining Agreement (hereinafter the CBA). The Arbitrator states in his opinion that [Denton] used unreasonable and unnecessary force. This interpretation, although not agreed to by the City or the Officer, are not in conflict

with the CBA, do not impose additional requirements, are not irrational, and are based on the terms of the CBA.

. . .

D. The decision of the Arbitrator to reinstate [Denton] violates Oklahoma public policy. As noted . . . by the [City], "an established public policy" which "condemn[s] the performance of employment activities in the manner engaged in by the employee" combined with ". . . [A]rbitrator's finding of no just cause explicitly conflicts with that policy." [Denton] in this case has engaged in conduct, as a police officer[,] that is contrary to statute. The conduct is inextricably related to his employment duties. [Denton]'s conduct in this case is sufficient to show that his continuing as an officer poses a special risk of injury, physical and psychological, to citizens, and, if he is allowed reinstatement, the department will be faced with explaining why Owasso allows abusive conduct by its officers, which is against the law.

. . . [T]he arbitration decision reversing termination is vacated. . . .

Defendants appeal, and again assert (1) the CBA expressly proscribes judicial review of the arbitrator's decision and (2) the trial court erred in setting aside the arbitrator's decision on public policy grounds.

¶9 The courts afford great deference to a decision of an arbitrator:

. . . In *Voss v. City of Oklahoma City,* [1980 OK 148,] 618 P.2d 925, 928 (Okl. 1980), we specifically adopted the review standard set forth by the U.S. Supreme Court in the *Steelworkers* Trilogy. *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct.

It is specifically and expressly understood that filing a grievance under this Article which has as its last step, final and binding arbitration, constitutes an election of remedies and a waiver of any and all rights by both parties, the

Lodge or other representatives of the party, to litigate or otherwise contest the last answer rendered through the Grievance Procedure in any court or their appeal forum.

1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Once it is established that there is a collective bargaining agreement with an arbitration clause broad enough to include the dispute the role of this Court is strictly limited to determining whether the arbitrator exceeded his authority under the collective bargaining agreement. *Voss v. City of Oklahoma City,* supra, *W.R. Grace Co. v. Local Union 759,* 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298; *Amer. Postal Workers v. United States Postal Serv.,* 789 F.2d 1, 5 (D.C.Cir.1986). Affording great deference to the decision of the arbitrator, we will not review the factual or legal findings of the arbitrator nor consider the merits of the award. *Georgia–Pacific Corp. v. Local 27,* 864 F.2d 940, 944 (1st Cir.1988); *Campo Machining Co., Inc. v. Local Lodge No. 1926,* 536 F.2d 330, 332 (Okla.1976). 'The fundamental purpose of arbitration is to preclude court intervention into the merits of disputes when arbitration has been provided for contractually.' *Voss v. City of Oklahoma City,* 618 P.2d at 927. Hence, this Court may only consider whether the arbitrator's decision 'draws its essence from the collective bargaining agreement.' *United Steelworkers v. Enterprise Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). *See also Fabricut, Inc. v. Tulsa Gen. Drivers,* 597 F.2d 227, 229 (1979).

... [T]he Court made clear almost 30 years ago that the courts play only a limited role when asked to review the decision of an arbitrator. The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract. 'The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards.' (Citation omitted.) *United Paperworkers Inter-*

*nat'l v. Misco,* 484 U.S. 29, 36 [108 S.Ct. 364, 370, 98 L.Ed.2d 286] (1987).

The goal of judicial review is to insure that the parties receive those things for which they bargained from the arbitrator. *See Nicolet High School Dist. v. Nicolet Educ. Ass'n,* 118 Wis.2d 707, 348 N.W.2d 175, 178 (1984).

*City of Yukon v. International Ass'n of Firefighters, Local 2055,* 1990 OK 48, ¶ 8, 792 P.2d 1176, 1179–1180. That is to say, so long as the arbitrator remains true to the essence of the parties' contract, his decision is generally impervious to challenge:

An arbitrator's authority and power are both derived from, and limited by the agreement. *Barrentine v. Arkansas–Best Freight System,* 450 U.S. 728, 744, 101 S.Ct. 1437, 1447, 67 L.Ed.2d 641 (1981). His duty is to interpret the agreement so as to give effect to the parties' intent. *Id.* Of course, an arbitrator may look for guidance in many sources, but he must remain faithful to the collective bargaining agreement. *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 53, 94 S.Ct. 1011, 1022, 39 L.Ed.2d 147 (1974); *Garner v. City of Tulsa,* 651 P.2d 1325, 1328 (Okla.1982). Arbitrators are required to use informed judgment to formulate remedies, and thus must be allowed flexibility in order to meet this goal. *Steelworkers,* 363 U.S. at 597, 80 S.Ct. at 1361. An award which is within the scope of the collective bargaining agreement is as binding as was the agreement authorizing it even if it appears ambiguous. *Id. Voss v. City of Oklahoma City,* supra at 927. Only when the "arbitrator's words manifest an infidelity to this obligation" will courts refuse to enforce the award. *United Steelworkers,* 363 U.S. at 597, 80 S.Ct. at 1361. *See also Alexander,* 415 U.S. at 53, 94 S.Ct. at 1022. "*[I]t is the construction of the arbitrator which was bargained for and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.*" *United Steelworkers,* 363 U.S. at 599, 80 S.Ct. at 1362.

*City of Yukon,* 1990 OK 48, ¶ 10, 792 P.2d at 1180. (Emphasis added.)

¶ 10 This is not to say, however, that an arbitrator's decision is always impervious to judicial vacatur. As the Oklahoma Supreme Court observed in *City of Yukon,* if the arbitrator exceeded his authority under the agreement to arbitrate, his decision is not entitled to enforcement. 1990 OK 48, ¶¶ 8, 10, 792 P.2d at 1179–1180. So, too, if the arbitrator decides an issue in the manifest and conscious disregard of the law, his decision is not entitled to enforcement. *See, e.g., Wilko v. Swan,* 346 U.S. 427, 436–437, 74 S.Ct. 182, 187–188, 98 L.Ed. 168 (1953)[3]; *Bowen v. Amoco Pipeline Co.,* 254 F.3d 925, 932 (10th Cir.(Okla.) 2001)[4]; *ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455, 1463 (10th Cir.(N.M.) 1995).[5]

¶ 11 And, relevant to this appeal, "a court may not enforce a collective bargaining agreement that is contrary to public policy," so, if the parties' "contract as interpreted by [the arbitrator] violates some explicit public policy, we are obliged to refrain from enforcing it." *W.R. Grace Co. v. Local Union 759,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983). "A court's refusal to enforce an arbitrator's award under a collective-bargaining agreement because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy. *W.R. Grace & Co. v. Rubber Workers,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983); *Hurd v. Hodge,* 334 U.S. 24, 34–35, 68 S.Ct. 847, 852–853, 92 L.Ed. 1187 (1948)." *United Paperworkers Intern. Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 42, 108 S.Ct. 364, 373, 98 L.Ed.2d 286 (1987).

¶ 12 "Such a public policy, however, must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.' *Muschany v. United States,* 324 U.S. 49, 66,

---

**3.** "... While it may be true, as the Court of Appeals thought, that *a failure of the arbitrators to decide in accordance with the provisions of the Securities Act would 'constitute grounds for vacating the award pursuant to section 10 of the Federal Arbitration Act,'* that failure would need to be made clearly to appear. In unrestricted submission, such as the present margin agreements envisage, the interpretations of the law by the arbitrators *in contrast to manifest disregard* are not subject, in the federal courts, to judicial review for error in interpretation ..." (Emphasis added.)

**4.** "Mindful of the strong federal policy favoring arbitration, a court may grant a motion to vacate an arbitration award only in the limited circumstances provided in § 10 of the FAA, 9 U.S.C. § 10, or in accordance with a few judicially created exceptions, *Denver & Rio Grande W. R.R. Co. [v. Union Pac. R.R. Co.],* 119 F.3d [847,] at 849 [ (10th Cir.1997) ]. Under the FAA, vacation is proper in certain instances of fraud or corruption, arbitrator misconduct, or '[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, definite award upon the subject matter submitted was not made.' 9 U.S.C. 10(a)(4). Although Amoco does not allege fraud or misconduct, it does argue that the arbitrators exceeded their powers. In addition, Amoco argues the arbitration panel's decision is in 'manifest disregard of the law,' a judicially crafted exception to the general rule that arbitrators' 'erroneous interpretations or applications of law are not reversible.' *ARW Explo-*

*ration Corp. [v. Aguirre],* 45 F.3d [1455,] at 1463 [ (10th Cir.1995) ] (citing *Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 98 L.Ed. 168 (1953), overruled on other grounds, *Quijas v. Shearson/Am. Express, Inc.,* 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)). We have interpreted manifest disregard of the law to mean 'willful inattentiveness to the governing law.' *ARW Exploration Corp.,* 45 F.3d at 1463 (internal quotation marks omitted). Requiring more than error or misunderstanding of the law, *id.,* a finding of manifest disregard means the record will show the arbitrators knew the law and explicitly disregarded it, *Prudential–Bache Sec., Inc. v. Tanner,* 72 F.3d 234, 240 (1st Cir.1995). Under traditional standards of review, we would, therefore, review Amoco's claims to determine whether the arbitrators exceeded their powers or rendered a decision in manifest disregard of the law."

**5.** "An arbitrator's erroneous interpretations or applications of law are not reversible. *Wilko v. Swan,* 346 U.S. 427, 436–37, 74 S.Ct. 182, 187, 98 L.Ed. 168 (1953). Only 'manifest disregard' of the law is subject to reversal. *Id.* This Court has characterized the 'manifest disregard' standard as 'willful inattentiveness to the governing law.' *Jenkins v. Prudential–Bache Sec., Inc.,* 847 F.2d 631, 634 (10th Cir.1988). Manifest disregard of the law 'clearly means more than error or misunderstanding with respect to the law.' *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker,* 808 F.2d 930, 933 (2nd Cir.1986)...."

65 S.Ct. 442, 451, 89 L.Ed. 744 (1945)." *W.R. Grace Co.*, 461 U.S. at 766, 103 S.Ct. at 2183. In *W.R. Grace Co.*, the Supreme Court conceded that an arbitrator's decision which required the violation of a court's injunction was unenforceable as contrary to public policy, but found no violation of public policy in that case. 461 U.S. at 769–770, 103 S.Ct. at 2185.[6] In *Misco, Inc.*, the Supreme Court held the appellate court's formulation of public policy to vacate the arbitrator's reinstatement of an employee "based only on 'general considerations of supposed public interests' is not the sort that permits a court to set aside an arbitration award that was entered in accordance with a valid collective-bargaining agreement." 484 U.S. at 44, 108 S.Ct. at 374.[7] And, in *Eastern Associated Coal Corp. v. United Mine Workers of America, Dist. 17,* 531 U.S. 57, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000), the United States Supreme Court held that neither the Omnibus Transportation Employee Testing Act of 1991 nor the Department of Transportation's implementing regulations "forbid an employer to reinstate in a safety-sensitive position an employee who fails a random drug test once or twice," and reversed the appellate vacatur of an arbitrator's decision to reinstate a truck driver as contrary to public policy. 531 U.S. at 65, 121 S.Ct. at 468.

¶ 13 Given these authorities, we reject Defendants' argument that the CBA precludes any judicial review of an arbitrator's decision.[8] Rather, we construe the CBA provision proscribing judicial review of the "last answer" in the grievance process to preclude only review of the arbitrator's decision on the merits, not whether the arbitrator exceeded his authority, or disregarded the law, or construed the contract in some way contrary to public policy.

¶ 14 In the present case, Defendants challenge the trial court decision to vacate the arbitrator's decision on public policy grounds. Consequently, the precise question to be answered in the present case is not whether Denton's use of unreasonable or unnecessary force violated public policy, but whether the CBA as interpreted by the arbitrator to permit Denton's reinstatement "run[s] contrary to an explicit, well-defined, and dominant public policy, as ascertained by reference to positive law and not from general considerations of supposed public interests?" *Eastern Associated Coal Corp.*, 531 U.S. at 62–63, 121 S.Ct. at 467.

¶ 15 In the present case, the trial court held Denton's reinstatement was contrary to public policy because: (1) Denton "in this case has engaged in conduct, as a police officer[,] that is contrary to statute," referring to 21 O.S. § 641 and 22 O.S. § 34.1, (2) "[t]he conduct is inextricably related to his employment duties," (3) Denton's "conduct in this case is sufficient to show that his continuing as an officer poses a special risk of injury, physical and psychological, to citizens," and, (4) "if he is allowed reinstate-

---

**6.** "[T]he Company here was faced with possible Title VII liability if it departed from the [District Court's] conciliation agreement in conducting its layoffs. The Company was cornered by its own actions, and it cannot argue now that liability under the collective bargaining agreement violates public policy."

**7.** "The Court of Appeals made no attempt to review existing laws and legal precedents in order to demonstrate that they establish a 'well-defined and dominant' policy against the operation of dangerous machinery while under the influence of drugs. Although certainly such a judgment is firmly rooted in common sense, we explicitly held in *W.R. Grace* that a formulation of public policy based only on 'general considerations of supposed public interests' is not the sort that permits a court to set aside an arbitration award that was entered in accordance with a valid collective-bargaining agreement.... Even

if the Court of Appeals' formulation of public policy is to be accepted, no violation of that policy was clearly shown in this case. In pursuing its public policy inquiry, the Court of Appeals quite properly considered the established fact that traces of marijuana had been found in Cooper's car. Yet the assumed connection between the marijuana gleanings found in Cooper's car and Cooper's actual use of drugs in the workplace is tenuous at best and provides an insufficient basis for holding that his reinstatement would actually violate the public policy identified by the Court of Appeals 'against the operation of dangerous machinery by persons under the influence of drugs or alcohol.' [*Misco, Inc. v. United Paperworkers Intern. Union, AFL–CIO,*] 768 F.2d [739,] at 743 [ (5th Cir.1985) ]. A refusal to enforce an award must rest on more than speculation or assumption."

**8.** *See,* footnote 2, supra.

ment, the department will be faced with explaining why Owasso allows abusive conduct by its officers, which is against the law."

¶ 16 As to the third basis, we discern no evidence that, having once been determined to have employed unreasonable force on an arrestee, Denton is more or less likely to again employ unreasonable force on an arrestee. This basis seems to us as little more than the court's own unsupported view of Denton's propensity to use unnecessary force.

¶ 17 As to the fourth basis, this is not the first time a police officer has been accused of employing unreasonable force, or the first time a police department has had to "explain" why it retained a police officer accused of using unreasonable force. Indeed, any decision of an arbitrator adverse to the position of the City may have some "fallout" which City will have to explain, but it is not the function of the court to protect the City from the consequences of the bargained-for arbitration process.

¶ 18 As to the first and second basis expressed by the trial court, the codified laws of this state clearly declare Oklahoma public policy. *See, e.g., Howard v. Nitro–Lift Technologies, L.L.C.,* 2011 OK 98, ¶ 20, 273 P.3d 20, 28, fn. 359 [9], [10]; *Darrow v. Integris Health, Inc.,* 2008 OK 1, ¶ 13, 176 P.3d 1204, 1212.[11] Section 641 of title 21, O.S., defines "assault" as "any willful and unlawful attempt or offer with force or violence to do a corporal hurt to another," while § 34.1 of title 22 criminalizes the use of "excessive force" by a peace officer, defines "excessive force" to mean "physical force which exceeds the degree of physical force permitted by law or the policies and guidelines of the law enforcement entity," presumes "[t]he use of excessive force ... when a peace officer continues to apply physical force in excess of the force permitted by law or said policies and guidelines to a person who has been rendered incapable of resisting arrest," and re-

quires law enforcement agencies to "adopt policies or guidelines concerning the use of force by peace officers which shall be complied with by peace officers in carrying out the duties of such officers within the jurisdiction of the law enforcement entity." We accept these statutes as expressing the public policy of this state to criminalize both the act of assault and the use of excessive force by a police officer, and to punish those individuals proven guilty in a court of law of committing those acts.

¶ 19 However, neither 21 O.S. § 644 nor 22 O.S. § 34.1 criminalize the hiring or retention in the employment a peace officer accused of "assault" or of using "excessive force," or equate the accusation of assault or the use of unreasonable or unnecessary force by a police officer to an adjudication of guilt of the crimes of "assault" or the use of "excessive force." If this were true, and, as the dissent seems to suggest, any peace officer accused of or determined to have used unreasonable, unnecessary or "excessive" force in the course of his employment would be immediately subject to termination, the law enforcement entity employing the peace officer would have no discretion other than to terminate the peace officer's employment, and the peace officer would have no grievable remedy for the termination of his employment under the collective bargaining agreement. The CBA cannot be construed as placing the questions of "just cause" for termination of the employment or appropriate discipline to be imposed for violation of departmental policy beyond the reach of an arbitrator's review.

¶ 20 That is why, in the context of this challenge to the arbitrator's decision to set aside Denton's termination and order his reinstatement, the trial court's conclusion that the arbitrator's construction of the CBA violated the public policy expressed by 21 O.S. § 644 and 22 O.S. § 34.1 is particularly egregious. The parties clearly bargained for an arbitrator's interpretation of the CBA, and so

---

**9.** "The Legislature defines Oklahoma's public policy through its statutory enactments."

**10.** Reversed on other grounds, *Nitro–Lift Technologies, L.L.C. v. Howard,* —— U.S. ——, 133 S.Ct. 500, 184 L.Ed.2d 328 (U.S.Okla.2012).

**11.** "Only a specific Oklahoma court decision, state legislative or constitutional provision, or a provision in the federal constitution that prescribes a norm of conduct for the state can serve as a source of Oklahoma's public policy."

long as the arbitrator remained true to the essence of the agreement, his decision should not be disturbed. More specifically, the parties bargained for the arbitrator's construction of the term "just cause" as used in the CBA, and, although reasonable people might differ on the appropriate discipline to be imposed, the CBA placed no limitation on the arbitrator's authority to craft a remedy for Denton's use of unreasonable and unnecessary force different from the decision of the City to terminate his employment. *See, Eastern Associated Coal Corp.*, 531 U.S. at 67, 121 S.Ct. at 469.[12] *See also, City of Minneapolis v. Police Officers' Federation of Minneapolis*, 566 N.W.2d 83, 90 (Minn.App. 1997).[13]

¶ 21 We hold the cited criminal statutes establish no public policy impediment to enforcement of the arbitrator's decision setting aside Denton's termination, and reinstating him to the employment. The trial court erred in vacating the arbitrator's decision as contrary to public policy. The order of the trial court is REVERSED.

BELL, J. (sitting by designation), concurs.

HETHERINGTON, V.C.J., respectfully dissents with opinion.

¶ 1 The trial court correctly found where the arrestee was in custody, at the police department, in handcuffs and face down on the floor, although facts are in dispute regarding injuries, the Arbitrator's "... interpretation, although not agreed to by the City or the Officer, are not in conflict with the CBA, do not impose additional requirements, are not irrational, and are based on the terms of the CBA." In my view, this is the

end of the legal analysis and violation of public policy findings were not necessary.

¶ 2 Title 22 O.S. § 34.1(B), provides, "The use of excessive force shall be *presumed* when a peace officer continues to apply physical force in excess of the force permitted by law or said policies and guidelines to a person who has been rendered incapable of resisting arrest." (Emphasis added). Therefore, under this CBA and to remain true to the essence of this agreement, excessive force must be presumed. For this reason, the Arbitrator's decision to reverse termination and impose written reprimand was properly reversed.

---

12. "We recognize that reasonable people can differ as to whether reinstatement or discharge is the more appropriate remedy here. But both employer and union have agreed to entrust this remedial decision to an arbitrator."

13. "The city has failed to show clearly that the arbitrator exceeded his authority under Minn. Stat. § 572.19, subd. 1(3). Because the CBA does not define the term 'just cause' or limit his authority to fashion an appropriate remedy, the arbitrator was free to adopt a reasonable definition and to craft an appropriate remedy if [the police officer's] conduct did not warrant discharge. We are bound by the arbitrator's factual and legal determinations, and we may not set

aside his decision, even if we were to disagree with it. There is nothing in the record showing that the arbitrator's decision was made in manifest disregard for the parties' CBA, the principles of contract construction, or in breach of the law of the shop. In short, nothing in the CBA or the parties' submission precluded the arbitrator from reaching the decision he did. Further, the city has failed to clearly show any well-defined and dominant public policy prohibiting police officers found by civil juries to have used excessive force from being reinstated to the police force. Accordingly, we decline to vacate the arbitrator's award on the ground that it violates public policy."