2016 OK CIV APP 4

**CITY OF TULSA, Plaintiff/Appellee,**

v.

**FRATERNAL ORDER OF POLICE, LODGE 93, and Kendra Miller, Defendants/Appellants.**

No. 111,537.

Court of Civil Appeals of Oklahoma, Division No. 2.

June 17, 2015.

James W. Connor, Jr., Randy Lewin, Richards & Connor, PLLP, Tulsa, Oklahoma, Gerald M. Bender, Assistant City Attorney, City of Tulsa, Tulsa, Oklahoma, for Plaintiff/Appellee.

Scott B. Wood, Wood, Puhl & Wood, P.L.L.C., Tulsa, Oklahoma, for Defendants/Appellants.

JANE P. WISEMAN, Judge.

¶ 1 Fraternal Order of Police, Lodge 93 (FOP) and Kendra Miller appeal from the trial court's order vacating the July 30, 2012, arbitration decision. Based on our review of the facts and applicable law, we conclude the trial court's decision should be affirmed.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 In May 2004, Kendra Miller was hired as a police officer for the Tulsa Police Department (TPD). In October 2006, the Federal Bureau of Investigation began investigating Miller in connection with her romantic involvement with Julio Lujan. Lujan, a club manager, was suspected of drug trafficking and later arrested, convicted of weapons possession, and deported. The FBI investigation also included reports that Miller was warning bar owners and/or managers about future bar raids and Fire Marshall inspections. In July 2009, the FBI notified Chief Ronald Palmer of the TPD "that after conducting an extensive joint investigation with the TPD," it was ending its investigation because the U.S. Attorney's office determined it did not have enough evidence to prosecute Miller. Based on the information from the FBI, Chief Palmer requested Internal Affairs to begin an investigation.

¶ 3 Miller was notified about the investigation and received notification of a pre-termination hearing to take place on December 10, 2009. On December 11, 2009, Miller was terminated for violating seven TPD Rules and Regulations. Miller filed a grievance contesting her termination pursuant to the Collective Bargaining Agreement between the City of Tulsa and Lodge # 93 Fraternal Order of Police. The arbitration hearing regarding the grievance took place on September 12–15, 2011. In his 35–page "Opinion and Award" issued on July 30, 2012, the arbitrator concluded:

*Conclusion*

I find that Miller violated Rule and Regulation # 8, Conduct unbecoming an Officer or Police Employee (the Second Reason), and Rule and Regulation # 11, Use of Department Vehicles (the Sixth Reason). I find that there was just cause for discipline. However, since I did not uphold the City with respect to the First, Third, Fourth, Fifth and Seventh Reasons and in light of Miller's superior performance evaluations, I find that discharge was too severe.

I am not awarding back pay in this case because Miller exercised poor judgment in befriending and associating with Lujan, manager of a bar that was a hotbed of criminal activity. Miller engaged in serious misconduct. Her behavior was unbecoming for a police officer. (Tr. 180, Vol. 2; City Ex. 2, Miller's Interview on August 11, 2009, p. 3) Her poor judgment resulted in rumors, a citizen's complaint, a TPD

internal investigation, and an FBI investigation.

*Award*

The discharge is reduced to a 30–day suspension without back pay. The City is directed to reinstate Miller forthwith to her former position as a police officer with full and unbroken seniority rights. The time that Miller was away from work (beyond the 30–day suspension) will be reflected in her personnel records as an excused absence. Miller will not receive any back pay. The City is directed to remove Miller's termination letter from her file and substitute a 30–day suspension.

¶ 4 Following this Opinion and Award, the City of Tulsa filed a petition to vacate the arbitrator's decision in the trial court. FOP and Miller filed an "Answer and Counterclaim to Enforce Decision of Arbitrator." FOP and Miller also filed a motion for partial summary judgment to enforce the arbitration award. The City of Tulsa filed a response to the motion for partial summary judgment and filed a cross-motion for summary judgment. After considering the briefs, supplemental briefs, and oral argument, the trial court denied FOP and Miller's motion for partial summary judgment and granted the City's cross-motion for summary judgment. The trial court ordered the arbitration award to be vacated finding:

The Arbitrator's sole issue, as stated in his award was, "Was Kendra Miller's employment with the City of Tulsa, Oklahoma, terminated for just cause? If not, what shall be the remedy?" The City of Tulsa stated seven separate reasons for termination in its termination letter dated December 11, 2009. The Arbitrator found just cause for two of the City's reasons for termination, and specifically found by a clear and convincing standard that Defendant Miller violated Rule # 8, CONDUCT UNBECOMING [AN] OFFICER OR POLICE EMPLOYEE, which was the primary reason for termination. Only if there was not "just cause" was the Arbitrator to fashion a remedy.

The Court finds that the Arbitrator exceeded his authority when he fashioned a remedy after finding just cause.

¶ 5 FOP and Miller appeal.

## STANDARD OF REVIEW

■ ¶ 6 "In reviewing an arbitrator's decision, the district court must afford the arbitrator great deference, and cannot review the merits of the award, including any of the factual or legal findings." *Fraternal Order of Police, Lodge 142 v. City of Perkins*, 2006 OK CIV APP 122, ¶ 4, 146 P.3d 829 (citing *City of Yukon v. International Ass'n of Firefighters, Local 2055*, 1990 OK 48, ¶ 8, 792 P.2d 1176). "Because the parties bargain for the arbitrator's construction of the contract, a reviewing court cannot overturn that decision merely because it disagrees with the arbitrator's interpretation of the contract." *Id.* "An arbitration award is only legitimate if it 'draws its essence from the collective bargaining agreement.'" *Id.* (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)). "Where there is a valid arbitration agreement, the courts will submit the dispute to arbitration; and where the arbitrator's award is within the submission and the authority established by the arbitration agreement, the courts will enforce the award." *Sooner Builders & Invs., Inc. v. Nolan Hatcher Constr. Servs., L.L.C.*, 2007 OK 50, ¶ 13, 164 P.3d 1063. However, "[i]f the arbitrator's words manifest an infidelity to this duty, the reviewing court has no choice but to refuse to enforce the award." *Perkins*, 2006 OK CIV APP 122, ¶ 4, 146 P.3d 829.

## ANALYSIS

¶ 7 "The OUAA [Oklahoma Uniform Arbitration Act, 12 O.S.2011 1851–1881] authorizes the district courts to vacate or modify an arbitrator's award on specific grounds." *Sooner*, 2007 OK 50, ¶ 23, 164 P.3d 1063. A trial court may vacate an arbitrator's award if it finds:

1. The award was procured by corruption, fraud, or other undue means;

2. There was:

a. evident partiality by an arbitrator appointed as a neutral arbitrator,

b. corruption by an arbitrator, or

c. misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;

3. An arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to Section 6 of this act, so as to prejudice substantially the rights of a party to the arbitration proceeding;

4. An arbitrator exceeded the arbitrator's powers;

5. There was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection under subsection C of Section 16 of this act not later than the beginning of the arbitration hearing; or

6. The arbitration was conducted without proper notice of the initiation of an arbitration as required in Section 10 of this act so as to prejudice substantially the rights of a party to the arbitration proceeding.

12 O.S.2011 1874(A) (footnotes omitted).

 ¶ 8 "The parties' agreement is the source of the arbitrator's power." *Sooner,* 2007 OK 50, ¶ 24, 164 P.3d 1063. "The parties' agreement may give the arbitrator broad power, and it may confine and limit the arbitrator's power." *Id.* "The arbitrator serves as the proctor of the parties' agreement and has the obligation to effectuate the intent of the parties' agreement." *Id.* "Hence, this Court may only consider whether the arbitrator's decision 'draws its essence from the collective bargaining agreement.'" *City of Yukon v. International Ass'n of Firefighters, Local 2055,* 1990 OK 48, ¶ 8, 792 P.2d 1176 (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)). "When the arbitrator's award manifests an infidelity to the parties' agreement, the courts must refuse to enforce the award." *Sooner,* 2007 OK 50, ¶ 24, 164 P.3d 1063.

 ¶ 9 An arbitrator's decision or "award does not draw its essence from the CBA when it" does any of the following:

1. conflicts with express terms of the collective bargaining agreement;

2. imposes additional requirements that are not expressly provided in the agreement;

3. is without rational support or cannot be rationally derived from the terms of the agreement; or

4. is based on general considerations of fairness and equity instead of the precise terms of the agreement.

*Perkins,* 2006 OK CIV APP 122, ¶ 4, 146 P.3d 829.

 ¶ 10 On appeal, FOP and Miller argue the arbitrator's decision drew its essence from the Collective Bargaining Agreement. The parties jointly submitted the following for the arbitrator to decide: "Was Kendra Miller's employment with the City of Tulsa, Oklahoma, terminated for just cause? If not, what shall be the remedy?" FOP and Miller contend the arbitrator "interpreted a difference between just cause to discharge and just cause for lesser discipline." FOP and Miller contend the arbitrator "properly exercised his authority by interpreting and applying the contractual 'just cause' provision to resolve the dispute submitted to him by the parties."

¶ 11 The relevant contractual "just cause" provision interpreted and applied by the arbitrator provides:

*Section 2.2* Except as may be limited herein, Employer retains the rights in accordance with the constitution and laws of the State of Oklahoma and the responsibilities and duties contained in the Charter of the City of Tulsa and the ordinances and regulations promulgated thereunder as follows:

. . .

(d) To discipline, suspend or terminate any employee for good and sufficient cause (good and sufficient cause is synonymous with "just cause") . . . .

¶ 12 The December 11, 2009, termination letter sent to Miller sets forth seven violations of the Tulsa Police Department's Rules

and Regulations. Of those seven, the arbitrator only found violations of Rule Number 8 (listed as the Second Reason for termination) and Rule Number 11 (listed as the Sixth Reason for termination). The December 11, 2009, letter describes the rule and summarizes the conduct as follows:

Rule and Regulation # 8, CONDUCT UNBECOMING AN OFFICER OR POLICE EMPLOYEE, which reads: *"Employees shall not commit any act or indulge in any behavior, on or off-duty, which tends to bring reproach or discredit upon the Department. They shall not engage in any conduct that is considered unbecoming an officer or employee which might be detrimental to the service. Except in the discharge of official duties or when unavoidable because of family ties, employees shall not knowingly associate with the individuals known or suspected of current criminal activity or convicted of a felony within the previous five (5) years, in other than a strictly professional capacity. This also applies to informant contacts. Employees are prohibited from engaging in or having business contacts with the above referenced individuals."* Exhibited by the fact that you had a personal relationship with Julio Lujan and Arnulfo Murillo. Murillo operated bars during the time and Lujan was a bar manager for him. Numerous individuals provided information that Lujan and Murillo were involved in drug trafficking during the time of your relationship. Lujan was subsequently charged and pled guilty to a weapons offense and has been deported.
. . . .

Rule and Regulation # 11, USE OF DEPARTMENT VEHICLES, which reads in part: *"Employees shall use a department vehicle only as authorized by current policies and procedures. Employees shall not permit unauthorized persons to ride in a department vehicle."* And Policy and Procedure 31–124, RIDE ALONG PROGRAM, which states in part: *"Citizen participation is limited to once per calendar year."* Exhibited by the fact that during the reviewed period, Lujan rode with you on numerous occasions, often weekly, without approval while you performed your duties as a Tulsa Police Officer.
(Emphasis partially omitted.)

¶ 13 In determining the penalty to impose on Miller, the arbitrator stated the following in its decision:

The degree of penalty should be in keeping with the seriousness of the offense. I upheld the City with respect to the Second Reason and the Sixth Reason. The Second Reason, where I found that Miller's conduct was unbecoming for a police officer is serious misconduct. Since there was evidence establishing that she associated with Lujan, even though she suspected that he may be involved in current criminal activity, a 30–day suspension is appropriate. This takes into account her superior performance evaluations and the Departmental letter of reprimand that is part of her work history.

With respect to the Sixth Reason, Kirkland testified that after seeing Lujan riding with Miller twice within two weeks he advised Miller "that she was in violation of the policy and that he was to ride (with her only) once a year." (Tr. 186, Vol. 2) Kirkland testified that he did not see her violate the policy again. It is difficult to distinguish disciplinary warnings (the lightest form of discipline) from other communications such as counseling that does not constitute disciplinary action. If Kirkland's communication amounted to a disciplinary warning, then it would be double jeopardy to discipline Miller again for the same infraction. However, I found, based on the record, that such communication constituted counseling. This infraction was not a serious infraction. Since she had already been counseled about this matter, I find that her 30–day suspension, in connection with the Second Reason, is sufficient discipline for both the Second Reason and the Sixth Reason.

¶ 14 The arbitrator was to determine the following: "Was Kendra Miller's employment with the City of Tulsa, Oklahoma, terminated for just cause? If not, what shall be the remedy?" The arbitrator concluded it "upheld the City with respect to the Second Reason and the Sixth Reason" finding there

was "just cause for discipline" and finding "discharge was too severe." The trial court determined, "The [a]rbitrator found just cause for two of the City's reasons for termination, and specifically found by a clear and convincing standard that [Miller] violated Rule # 8, CONDUCT UNBECOMING [AN] OFFICER OR POLICE EMPLOYEE, which was the primary reason for termination." The trial court further determined that "[o]nly if there was not 'just cause' was the Arbitrator to fashion a remedy." The trial court held "that the Arbitrator exceeded his authority when he fashioned a remedy after finding just cause." In other words, because the arbitrator answered the first question in the affirmative, the trial court found he had no authority to address the second question or to fashion a different remedy.

¶ 15 We find persuasive the reasoning found in a recent Eighth Circuit decision, *Northern States Power Company, Minnesota v. International Brotherhood of Electrical Workers Local 160*, 711 F.3d 900 (8th Cir. 2013), which addresses identical issues. The issue for the arbitrator in *Northern States Power* was identical to the instant case: "Was the Grievant, Curtis Snow, terminated for just cause? If not, what shall the appropriate remedy be?" *Id.* at 901. After employer conducted a routine background check, it learned Snow had pled guilty to possession of a pornographic work involving a minor and was sentenced to a term of probation. *Id.* One of the terms of his probation was that he could not have any " 'contact with a minor until approved.' " *Id.* After learning of Snow's probation and its terms, employer "determined that it could not guarantee that Snow would have no contact with a minor while performing his job duties" and terminated him. *Id.*

¶ 16 After the arbitration hearing to determine the cited issue, the arbitrator ruled:
[T]he Local's grievance is denied in part and sustained in part. To the extent that Mr. Snow was convicted of a serious crime that raises some very legitimate concerns on the part of the Management going forward, they have demonstrated justification for their decision. At the same time however, the. Union has presented convincing evidence which sets forth a number of factors that existed which ultimately favor the imposition of a penalty less than the Grievant's dismissal.

*Id.* The arbitrator then directed employer to allow grievant to return to work, without back pay at his "former position or a position with near or equal pay and benefits." *Id.* Employer filed a motion to vacate the arbitration decision arguing the arbitrator exceeded his authority under the collective bargaining agreement when ordering employer to reinstate grievant. *Id.* The district court granted employer's motion to vacate and the Eighth Circuit affirmed. *Id.*

¶ 17 The provision of the CBA in the *Northern States Power* case provided "that '[i]n the matter of suspension, demotion, or discharge, if after hearing witnesses, the charges are not sustained ... the arbitration board may rule that the employee shall or shall not receive full or partial wages from the Company.' " *Id.* at 902.

¶ 18 The Eighth Circuit examined the two-part issue presented to the arbitrator and found:

The question presented in this case is a narrow one: Did the arbitrator determine that [employer] had "just cause" for terminating Snow? ... We are guided in our analysis by other circuits that have addressed virtually this same question.... [T]he Fifth Circuit also affirmed a district court's order vacating the arbitrator's award, concluding that "if the relevant [CBA] requires just cause for dismissal, an arbitrator acts beyond its jurisdiction by fashioning an alternate remedy once it has concluded—implicitly or otherwise—that an employee's conduct constitutes just cause for dismissal."

Additionally, our prior decision in *St. Louis Theatrical Co. v. St. Louis Theatrical Brotherhood Local 6,* supports the conclusion of the district court in this case. 715 F.2d 405 (8th Cir.1983). There we held that, after the arbitrator determined the employee participated in a work stoppage as defined by the CBA, the arbitrator exceeded his authority by concluding that

discharge was an excessive penalty for the misconduct.

Here, the language of the arbitrator's decision—specifically that [employer] had "demonstrated justification" for its decision to terminate Snow—is sufficient to show that the arbitrator found the termination was supported by "just cause." Having answered the first submitted question in the affirmative, the arbitrator had no authority to address the second question or to fashion a remedy different than the termination. Therefore, the district court properly vacated the arbitrator's award for reaching beyond his authority under the CBA.

*Id.* at 902–03 (citations omitted).

¶ 19 After reviewing the record and applicable law, we affirm the trial court's order vacating the arbitrator's decision. As to the Second Reason for termination, the arbitrator found "[t]he evidence is clear and convincing that Miller ... associated with and had a personal off-duty relationship with Lujan from about May 2005 until May 2007." He further stated, "I find that Miller suspected that Murillo and Lujan were engaged in criminal activity." (Emphasis omitted.) The arbitrator also found:

> I find that Miller, just by showing up to protect Lujan, put herself in a conflict of interest situation. She demonstrated by her actions and by her testimony that she had divided loyalties. Miller's behavior was unbecoming for a police officer.

(Emphasis omitted.) The arbitrator concluded in his decision that although he "upheld the City with respect to the Second Reason and the Sixth Reason," and agreed the Second Reason constitutes "serious misconduct," he took "into account her superior performance evaluations" and the fact that he "did not uphold the City with respect to the First, Third, Fourth, Fifth and Seventh Reasons" to conclude "discharge was too severe" and instead "a 30-day suspension is appropriate."

¶ 20 In doing so, the arbitrator's award did not draw its essence from the CBA. As the City of Tulsa argues, the arbitrator went outside the CBA in finding "the Chief had just cause, but then lessened Miller's punishment for two reasons: because of good performance evaluations and because City did not sufficiently prove its other allegations." The City of Tulsa contends "[t]his is where the [a]rbitrator went outside the CBA, as the trial court found." The City further argued, "The CBA does not provide that an officer committing just cause for termination can be excused if she does not commit other violations to the [a]rbitrator's satisfaction." Furthermore, the City asserts that the arbitrator's finding that it would be "unfair to terminate Miller because of her good reviews" does not draw its essence from the CBA.

¶ 21 We agree with the trial court's conclusion that because the arbitrator answered the first question in the affirmative, he exceeded his authority by addressing the second question and then applying a different remedy. The arbitrator's decision, applying concepts of fairness and equity, does not draw its essence from the CBA. We affirm the trial court's order to vacate the arbitration decision.

## CONCLUSION

¶ 22 We therefore affirm the trial court's order vacating the July 30, 2012, arbitration decision. Because this issue is dispositive, we do not address the remaining issues raised on appeal.

¶ 23 **AFFIRMED.**

FISCHER, P.J., concurs, and GOODMAN, V.C.J., concurs specially.

GOODMAN, V.C.J., concurring specially.

¶ 1 But for the limitations contained in the parties' submission to the arbitrator, the arbitrator would have had the power to fashion a remedy in this case. *See City of Owasso v. Fraternal Order of Police,* 2014 OK CIV APP 75, 336 P.3d 1023. Accordingly, because the arbitrator decided an issue not submitted for his determination, I agree with the trial court's order vacating the arbitration award.