2017 OK CIV APP 13

The CITY OF GUTHRIE, Oklahoma,
a municipal corporation,
Plaintiff/Appellant,

v.

FRATERNAL ORDER OF POLICE,
LODGE #105, Defendant/Appellee,

and

Mark Bruning, Intervenor/Appellee.

Case Number: 114698

Court of Civil Appeals of Oklahoma,
Division No. 2.

Decided: 01/25/2017

Mandate Issued: 02/23/2017

Tony G. Puckett, MCAFEE & TAFT, A PROFESSIONAL CORPORATION, Oklahoma City, Oklahoma, for Plaintiff/Appellant

Jarrod A. Leaman, JAMES R. MOORE & ASSOCIATES, P.C., Oklahoma City, Oklahoma, for Defendant/Appellee

R. Scott Adams, ADAMS & ASSOCIATES, P.C., Oklahoma City, Oklahoma, for Intervenor/Appellee

DEBORAH B. BARNES, JUDGE:

¶ 1 Plaintiff/Appellant The City of Guthrie, Oklahoma, a municipal corporation, (the City) appeals from an order of the trial court granting a motion for summary judgment by Intervenor/Appellee Mark Bruning (Bruning) to enforce an arbitration award on his behalf and that of the Defendant/Appellee Fraternal Order of Police, Lodge #105 (Lodge 105), and denying the City's counter motion to vacate the "remedy portion of the award" because, for various reasons, the arbitrator exceeded his authority under the parties' Collective Bargaining Agreement (CBA). We conclude the trial court's decision should be affirmed.

## PROCEDURAL BACKGROUND

¶ 2 Bruning was a police officer for the Guthrie Police Department. The circumstances giving rise to the arbitration occurred at a concert held in Guthrie during which Bruning arrested his then girlfriend's ex-husband for public intoxication. Bruning arrested the man despite an Incident Action Plan (IAP) issued by the Chief of Police directing officers to make arrests only as a last resort. A holding pen and other options short of arrest were available to officers. Written complaints about Bruning's actions were made to the police department and an internal investigation was conducted by the Chief of Police pursuant to the terms of the CBA. The Chief of Police then forwarded the results to a Disciplinary Hearing Panel consisting of, among others, the Human Resources Director. After a hearing in which witnesses testified, the Hearing Panel unanimously determined Bruning should be discharged for various violations of Guthrie Police Department policy and recommended termination. That determination was forwarded to the City Manager who upheld the recommendation. Bruning was terminated from employment with the City.

¶ 3 Lodge 105 filed a grievance over Bruning's discharge and, pursuant to the CBA, requested arbitration. The parties submitted post-hearing briefs.

¶ 4 The arbitrator found that "[g]iven the nature of the charges and the severity of the penalty imposed," the City had the burden "to prove by clear and convincing evidence the decision to terminate [Bruning's] employment was for just cause." Referencing the CBA's definition of just cause and that just cause was to be in accord with *City of Law-*

ton v. *International Union of Police Associations, Local 24*, 2000 OK CIV APP 2, 996 P.2d 954, *cert. denied* (Mathis), the arbitrator determined: "To this arbitrator, the rule in Mathis simply states the widely accepted principle that just cause requires discipline be issued in a manner that is not arbitrary and capricious." After setting forth the facts pertaining to Bruning's alleged misconduct and the facts pertaining to the conduct of the investigation and the decision-making process leading to the decision to terminate Bruning, the arbitrator determined as follows:

> The City established by clear and convincing evidence that [Bruning's] conduct warranted punishment, up to and including termination. However, [I find] both parties are at fault in this matter, [Bruning] for exercising poor judgment and abuse of power, and the City Manager and Human Resources Director for being influenced by allegations without any verification. The result was an unfounded and unacceptable bias against [Bruning] during the investigation and decision making process. The City Manager and the Human Resources Director acted in a way that was arbitrary and capricious, therefore the Disciplinary Hearing Panel's finding that there was just cause for the decision to terminate [Bruning's] employment cannot stand.

The arbitrator further found severe discipline was warranted by Bruning's conduct and instructed the City to place Bruning on suspension for six months without pay and to thereafter reinstate him to his rank of Lieutenant.

¶ 5 The City filed a petition to vacate the arbitrator's decision in the trial court. Thereafter, the parties filed various pleadings and motions, including motions and counter motions for summary judgment. After considering the parties' motions, responses, and replies and supporting briefs and oral argument, the trial court denied the City's counter motion for summary judgment, granted Bruning's motion for summary judgment, and ordered enforcement of the arbitration award. The City appeals.

## STANDARD OF REVIEW

¶ 6 "The fundamental purpose of arbitration is to preclude court intervention into the merits of disputes when arbitration has been provided for contractually." *Voss v. City of Okla. City*, 1980 OK 148, ¶ 5, 618 P.2d 925. The standard applicable to review of an arbitrator's award is well established in Oklahoma.

> Once it is established that there is a collective bargaining agreement with an arbitration clause broad enough to include the dispute, the role of this Court is strictly limited to determining whether the arbitrator exceeded his authority under the collective bargaining agreement. Affording great deference to the decision of the arbitrator, we will not review the factual or legal findings of the arbitrator nor consider the merits of the award. . . . Hence, this Court may only consider whether the arbitrator's decision "draws its essence from the collective bargaining agreement."

*City of Yukon v. Internat'l Ass'n of Firefighters, Local 2055*, 1990 OK 48, ¶ 8, 792 P.2d 1176 (citations omitted).

¶ 7 Statutory construction presents a question of law, *State v. Tate*, 2012 OK 31, ¶ 7, 276 P.3d 1017, and, consequently, requires a de novo review standard, *id.*; *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081.

## ANALYSIS

¶ 8 The City raises six issues on appeal all of which assert the district court erred in failing to vacate the remedy portion of the arbitrator's award.[1] Lodge 105 and Bruning argue the arbitrator interpreted the CBA, as he is authorized to do under the CBA, and

---

1. Proposition one asserts the arbitrator failed to stay within the issue submitted to him; proposition two asserts the arbitrator exceeded his authority by addressing bias; proposition three asserts the arbitrator failed to adhere to the definition of just cause in the CBA; proposition four asserts the arbitrator improperly added a provision to the CBA regarding notice; proposition five asserts the remedy portion of the arbitrator's award violates public policy; and proposition six asserts the district erred in determining that the arbitrator found there was not just cause for discharge.

found no just cause for termination; consequently, they argue the trial court did not err in enforcing the arbitration award. We have grouped the City's propositions into three issues.

## I. Just Cause for Termination

¶ 9 The City's arguments concerning the remedy portion of the arbitrator's award draws its support from prior decisions of this Court. In *City of Tulsa v. Fraternal Order of Police, Lodge 93*, 2016 OK CIV APP 4, 365 P.3d 82, *cert. denied*, another division of this Court explained:

> An arbitrator's decision or "award does not draw its essence from the CBA when it" does any of the following:
>
> 1. conflicts with express terms of the collective bargaining agreement;
>
> 2. imposes additional requirements that are not expressly provided in the agreement;
>
> 3. is without rational support or cannot be rationally derived from the terms of the agreement; or
>
> 4. is based on general considerations of fairness and equity instead of the precise terms of the agreement.

*Id.* ¶ 9 (citing *Fraternal Order of Police v. Perkins, Lodge 142*, 2006 OK CIV APP 122, ¶ 4, 146 P.3d 829, *cert. denied*). We conclude the arbitrator's decision in this case was within his authority under the CBA.

¶ 10 As correctly stated by the City, "[t]he arbitrator frame[d] the issue to be: Was the termination of [Bruning's] employment for just cause? If not, what is the appropriate remedy?" The issue framed by the arbitrator in this case is essentially the same as the issue framed in *Lodge 93* in which the Court held the arbitrator exceeded his authority under the collective bargaining agreement. There the Court concluded the arbitrator found the city demonstrated by clear and convincing evidence that it had just cause to terminate the grievant thereby answering the first question in the affirmative; however, the arbitrator went beyond the scope of his

authority under the CBA because the arbitrator then addressed the second question and applied a different remedy. 2016 OK CIV APP 4, 21, 365 P.3d 82. The Court concluded: "The arbitrator's decision, applying concepts of fairness and equity, does not draw its essence from the CBA." *Id.*

¶ 11 In that case, the arbitrator found there was just cause for discipline for two of the seven reasons asserted by the city for discipline, but because the arbitrator did not find just cause for the other five reasons, the arbitrator determined the discipline imposed by the city was too severe. *Id.* ¶ 3. The *Lodge 93* Court rejected the argument that the arbitrator "interpreted a difference between just cause to discharge and just cause for lesser discipline," and that the arbitrator "properly exercised his authority by interpreting and applying the contractual 'just cause' provision to resolve the dispute submitted to him by the parties." *Id.* ¶ 10.

¶ 12 Relying on a federal appellate case,[2] the *Lodge 93* Court affirmed the trial court's order vacating the arbitration award reasoning as follows:

> [T]he arbitrator's award did not draw its essence from the CBA. As the City of Tulsa argues, the arbitrator went outside the CBA in finding "the Chief had just cause, but then lessened [grievant's] punishment for two reasons: because of good performance evaluations and because City did not sufficiently prove its other allegations." The City of Tulsa contends "[t]his is where the [a]rbitrator went outside the CBA, as the trial court found." The City further argued, "The CBA does not provide that an officer committing just cause for termination can be excused if she does not commit other violations to the [a]rbitrator's satisfaction." Furthermore, the City asserts that the arbitrator's finding that it would be "unfair to terminate [grievant] because of her good reviews" does not draw its essence from the CBA.

*Id.* ¶ 20.

¶ 13 In the present case, however, the trial court found the arbitrator answered the first

**2.** *N. States Power Co., Minn. v. Internat'l Bhd. of Elec. Workers, Local 160*, 711 F.3d 900 (8th Cir. 2013).

question in the negative. The trial court remarked that it did not "believe that the arbitrator made his decision with good language or use of . . . his thinking." The court believed "it appears . . . [the arbitrator] was combining things but may be separating them as he was talking along." However, the trial court determined the arbitrator "ultimately decided" there was not just cause to terminate because the arbitrator found the investigation and the termination hearing were arbitrarily and capriciously conducted. Thus, the trial court took heed of the Oklahoma Supreme Court's admonition: "Courts recognize that at times, the decision of an arbitrator will be ambiguous; ambiguity, however, is no reason to void the decision." *Yukon*, ¶ 10 (citation omitted). Consequently, the trial court found the arbitrator did not exceed his authority under the CBA when he then answered the second question and fashioned a different remedy drawn from the CBA. We agree with the trial court's decision to enforce the arbitration award.

¶ 14 The CBA provides:

Any and all disciplinary actions must be for "just cause" and be properly documented as set forth by this Article [Art. 26, Disciplinary Process] and pursuant to this Agreement. For the purposes of this Agreement, "For the good of the service and Just cause" shall be as set forth in [Mathis], and be defined equally, carrying the same burdens. Regardless of terminology, all provisions of this [A]greement shall apply.

The arbitrator specifically stated: "To this arbitrator, the rule in Mathis simply states the widely accepted principle that just cause requires discipline be issued in a manner that is not arbitrary and capricious." The arbitrator's decision as a whole makes clear the arbitrator interpreted the CBA just cause definition to require a decision to terminate that is free from the arbitrary and capricious actions of the City or its management.

¶ 15 The arbitrator set forth the evidence concerning Bruning's misconduct and, based

on that evidence, concluded the City had "shown [Bruning] violated the Guthrie Police Department Code of Ethics, and the Department's Policies and Procedures as set forth above and as the City correctly argues, the use of police power for personal gain is just cause for discharge." However, in keeping with the arbitrator's interpretation of Mathis "that just cause requires discipline be issued in a manner that is not arbitrary and capricious," the arbitrator then determined the fairness of the investigation and found that fairness was lacking. The arbitrator stated,

Industrial due process requires management to conduct a reasonable inquiry or investigation before assessing punishment. Procedural fairness requires an employer to conduct *a full and fair investigation* of the circumstances surrounding an employee's conduct and to provide an opportunity for him to offer denials, explanations, or justifications that are relevant before the employer makes its final decision, *before its position becomes polarized.*[3]

In his view of the evidence, the arbitrator found "the testimony of two vital decision makers clearly indicates there was a bias against [Bruning] throughout the proceedings to terminate [him]." He found "highly inflammatory" statements were made against Bruning by not only the City Manager, but by the Human Resources Director, one of the three members of the Hearing Panel. The arbitrator found the "attempt to use fear-based hypothetical events against [Bruning] did not bolster the City's case against [Bruning]."[4]

¶ 16 Unlike the circumstances in *Lodge 93*, the arbitrator in the present case interpreted the CBA just cause language with reference to Mathis, as required by the terms of the CBA, to require that discipline be issued in a manner that is not arbitrary and capricious and made specific factual findings about the City's wrongful conduct. The arbitrator's reference to bias was within the context of his finding that the City acted arbitrarily and capriciously in the investigation and decision-

---

**3.** (Emphasis added) (citation omitted).

**4.** As argued by Lodge 105 and Bruning, the CBA—in its provisions dealing with the disciplin-

ary process—specifically proscribes bias by the City and management against an employee. CBA Art. 26, 2.

making process. "Affording great deference to the decision of the arbitrator, we will not review the factual or legal findings of the arbitrator nor consider the merits of the award." *Yukon*, ¶ 8 (citations omitted).

¶ 17 Only after answering the first question in the negative did the arbitrator address the second question and fashion a remedy that was less than termination but within the range of remedies identified in the CBA.[5] The arbitrator sustained the grievance, in part, finding Bruning's conduct warranted severe discipline, but because of "the unfair bias created during the pendency of the disciplinary proceedings and his length of service" the arbitrator mitigated the penalty from termination to six-month suspension without pay and reinstatement to his rank of Lieutenant after the period of suspension.

¶ 18 We conclude the arbitrator acted within his authority under the CBA. Consequently, we further conclude the trial court committed no error in determining the arbitrator did not find just cause for termination, nor did the court err in refusing to vacate the arbitrator's remedy on the ground that the arbitrator exceeded his authority under the CBA.

## II. Notice Requirement

¶ 19 The City argues the trial court erred in not vacating the arbitrator's remedy because the arbitrator acted beyond his authority "by improperly adding a provision to the [CBA] regarding notice." In his decision, the arbitrator stated:

■ Regarding the charge of Insubordination, [Lodge 105] has alleged a due process violation because the City failed to bring this charge until after the investigation. The evidence shows that [Bruning] was not provided notice of the additional charge until October 7, 2013, just days prior to the hearing. Such late notice was not adequate to allow [Bruning] time to prepare ... a defense. As such, the charge was improper and will not be considered by the arbitrator as a charge against [Bruning]. That does not in any way change the fact that [the Chief of Police's] directive on September 7, 2013, was to use arrest only as a last resort.[6]

■ ¶ 20 The arbitrator found that *after the investigation*—an investigation the arbitrator found to be arbitrarily and capriciously conducted—the insubordination charge was added. Because the arbitrator found the City's conduct during the investigation and decision-making process prevented just cause for termination, the arbitrator's consideration of the insubordination charge would likely have led to no different result regarding just cause. Regardless of this likelihood, we conclude the arbitrator's decision concerning any of the alleged reasons for discipline goes to the merits of the arbitrator's award and is beyond our review. *Yukon*, ¶ 8.

## III. Public Policy

¶ 21 The City also raises as an issue on appeal the question of whether the trial court erred in failing "to vacate the remedy portion of the award because the effect of the arbitrator's decision was to reinstate a police officer who abused his office, which is in violation of Oklahoma public policy as codified at 70 O.S. 3311[.]"[7] Thus, although the arbitrator determined Bruning was not terminated for just cause because the investigation and decision-making process were taint-

---

**5.** CBA Art. 6, 1(G).

**6.** Although no particular sections of the CBA were included in the arbitrator's statement, subsections (a), (b), (c) and (e) of Art. 26, II concern notice that is to be given to an employee, and Art. 26, 7, addresses the questions an employee may be asked during the investigation pertaining to the employee's conduct or actions giving rise to the investigation. Even if the arbitrator was interpreting these provisions of the CBA, the CBA clearly has notice provisions that are subject to the arbitrator's interpretation. Thus, while the City disagrees with what may be the arbitrator's interpretation of these provisions, "it is the construction of the arbitrator which was bargained for and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Yukon*, ¶ 11(citation omitted).

**7.** Section 3311 provides for the creation of a Council on Law Enforcement Education and Training (CLEET) to oversee a program of advanced training and education of state law enforcement officers and promulgate rules and regulation for, among other things, certification of police officers.

ed by the arbitrary and capricious actions of the City, the City argues the arbitrator's remedy violated public policy by imposing discipline less than termination. It argues public policy is violated because the arbitrator found clear and convincing evidence that Bruning showed poor judgment and abuse of power by arresting a citizen for personal reasons.

¶ 22 In addressing this public policy argument, we find instructive the reasoning and conclusions reached by another division of this Court in *City of Owasso v. Fraternal Order of Police, Lodge 149*, 2014 OK CIV APP 75, 336 P.3d 1023, *cert. denied*, in which the Court reversed the trial court's determination that the arbitrator's remedy of reinstatement of a police officer violated public policy. The Court recognized "that an arbitrator's decision is [not] always impervious to judicial vacatur." *Id.* ¶ 10. Thus, the Court explained, the arbitrator's decision is not entitled to enforcement if the arbitrator exceeded his authority under the agreement, or if the arbitrator's decision manifests a conscious disregard of the law. " '[A] court may not enforce a collective bargaining agreement that is contrary to public policy,' so, if the parties' 'contract as interpreted by [the arbitrator] violates some explicit public policy, we are obliged to refrain from enforcing it.' " *Id.* ¶ 11 (quoting *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983)). "A court's refusal to enforce an arbitrator's award under a collective-bargaining agreement because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy. ..." *City of Owasso*, 11 (quoting *United Paperworkers Intern'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 42, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987)). Consequently, the *City of Owasso* Court rejected the argument that judicial review of an arbitrator's decision on public policy grounds is precluded: "Rather, we construe the CBA provision proscribing judicial review of the 'last answer' in the grievance process to preclude only review of the arbitrator's decision on the merits, not whether the arbitrator exceeded his authority, or disregarded the law, *or construed the contract in some way contrary to public policy*." *City of Owasso*, 13 (emphasis added).

¶ 23 Similar to the way the issue on appeal was framed by the Court in *City of Owasso*, the issue before this Court is whether the CBA as interpreted by the arbitrator to permit discipline less than termination where just cause for termination is not found, "run[s] contrary to an explicit, well-defined, and dominant public policy, as ascertained by reference to positive law and not from general considerations of supposed public interests?" *Id.* ¶ 14 (quoting *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62–63, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000)).

¶ 24 As stated by the *City of Owasso* Court, "the codified laws of this state clearly declare Oklahoma public policy." *Id.* ¶ 18 (citing *Darrow v. Integris Health, Inc.*, 2008 OK 1, 13, 176 P.3d 1204 ("Only a specific Oklahoma court decision, state legislative or constitutional provision, or a provision in the federal constitution that prescribes a norm of conduct for the state can serve as a source of Oklahoma's public policy.") (emphasis omitted)). The City argues the applicable public policy is set forth in 70 O.S. Supp. 2015 3311, which provides, in part, as follows:

J. 1. A police or peace officer shall be subject to disciplinary action to include a denial, suspension, revocation or acceptance of voluntary surrender of peace officer certification upon a showing of clear and convincing evidence for the following:

. . .,

g. abuse of office[.]

That subsection also sets out how disciplinary proceedings shall begin, and states that "[u]pon the filing of the complaint, a preliminary investigation shall be conducted to determine whether: a. there is reason to believe the person has violated any provision of this subsection or any other provision of law or rule...." 3311(J)(3). The subsection further provides, in part: "When the investigation of a complaint finds that the person has violated any of the provisions of this subsection, the matter shall be referred for disciplinary proceedings. The disciplinary proceedings shall

be in accordance with Articles I and II of the Administrative Procedures Act." 3311(J)(4) (footnote omitted).

¶ 25 The City further contends that pursuant to 3311(E)(1)(f), suspension is tantamount to termination because the police officer is not eligible for employment so the arbitrator's remedy in failing to terminate Bruning is against public policy. That subsection provides:

No person shall be eligible for employment as a peace officer or reserve peace officer until the employing law enforcement agency has conducted a background investigation of such person consisting of the following:

... ,

f. such person is not currently subject to an order of the Council revoking, suspending, or accepting a voluntary surrender of peace officer certification[.]

However, until there is such "an order of the Council," the police officer is not ineligible to be a police officer. Moreover, subsection (J)(10)(c) provides, in part: "Any person seeking reinstatement of police or peace officer certification which has been suspended, revoked, or voluntarily surrendered may apply for reinstatement pursuant to promulgated CLEET rules governing reinstatement."

¶ 26 Pursuant to Oklahoma Administrative Code 390:10-1-7(b) (2016), the certification of a peace officer may be suspended pursuant to the provisions of 3311, and provides:

(1) If any action against a peace officer results in the suspension of peace officer certification, the suspended officer shall not engage in law enforcement activities of any type during the period of suspension. Any peace officer found to be engaging in law enforcement activities of any kind during the period of suspension shall be subject to revocation of peace officer certification without prior notice but otherwise subject to administrative proceedings.

. . . .

(3) Administrative actions involving actions against a peace officer in which suspension of peace officer certification is provided by law, shall be conducted in accordance 70 O.S. 3311, the Administrative Procedures Act, OAC 390:2-1 et[ ] seq. and this chapter.

(4) A suspension ordered after administrative hearing shall state the term of the suspension. Unless otherwise provided by law, the Hearing Examiner may establish a reasonable length of suspension.

While the regulation concerning suspended certification clearly disallows a suspended police officer from engaging in law enforcement activities during the period of suspension, those regulations contemplate a set period of suspension, including "a reasonable length of suspension," and reinstatement.[8]

¶ 27 We, therefore, are not persuaded by the City's argument that these provisions of 3311 demonstrate that the arbitrator's interpretation of the CBA to impose a remedy less than termination "run[s] contrary to an explicit well-defined, and dominant public policy...." *City of Owasso*, ¶ 14 (citation omitted).

The parties clearly bargained for an arbitrator's interpretation of the CBA, and so long as the arbitrator remained true to the essence of the agreement, his decision should not be disturbed. More specifically, the parties bargained for the arbitrator's construction of the term "just cause" as used in the CBA, and, although reasonable people might differ on the appropriate discipline to be imposed, the CBA placed no limitation on the arbitrator's authority to craft a remedy for [the grievant's] use of

8. The process for reinstatement pursuant to 390:10-1-7(c) is not without challenge, but is nonetheless available:
(4) If a request is denied, the Administrative Procedures found in OAC 390:2-1 et[ ] seq. will govern the hearing.

(5) Individuals who have had their certification reinstated must meet the continuing education requirements described in 70 O.S. 3311.4.

unreasonable and unnecessary force different from the decision of the City to terminate his employment.

*Id.* ¶ 20 (citations omitted) (footnotes omitted). Consequently, we conclude 3311 establishes no public policy impediment to enforcement of the arbitrator's decision imposing suspension rather than termination for Bruning's conduct.

## CONCLUSION

¶ 28 We affirm the trial court's order enforcing the arbitration decision.

¶ 29 **AFFIRMED.**

THORNBRUGH, P.J., and RAPP, J., concur.